IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                )
Broadband iTV, Inc.,            )
                                )
            Plaintiff,          )
                                )
    v.                          ) Civ. No. 14-00169 ACK-RLP
                                )
Hawaiian Telcom, Inc.,          )
                                )
            Defendant.          )
_____ )

**ORDER GRANTING DEFENDANT HAWAIIAN TELCOM, INC.'S MOTION FOR
SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101**

For the reasons set forth below, the Court GRANTS Defendant
Hawaiian Telcom, Inc.'s Motion for Summary Judgment of
Invalidity under 35 U.S.C. § 101, ECF No. 463.

**FACTUAL AND PROCEDURAL HISTORY**

On December 8, 2009, the United States Patent and Trademark
Office ("USPTO") issued Patent No. 7,631,336 (the "'336
Patent"), entitled "Method for Converting, Navigating and
Displaying Video Content Uploaded from the Internet to a Digital
TV Video-on-Demand Platform."  Am. Compl. ¶ 19, Ex. A, ECF Nos.
100, 100-1.  The patent was issued in the name of Milton Diaz
Perez ("Diaz Perez")[1] and based on United States Patent
Application No. 11/685,188 (the "'188 Application"), which was

_____
[1]Diaz Perez serves as Chief Technology Officer for Broadband
iTV, Inc.  See Declaration of Milton Diaz Perez ¶ 1, ECF No. 77-
1.

assigned to Broadband iTV, Inc. ("Plaintiff").  Am. Compl. ¶ 18, ECF No. 100.

The '336 Patent discloses and claims various features related to the delivery of video-on-demand ("VOD")[2] content to a VOD server.  Id. ¶ 21.  According to the patent itself, the invention is intended to facilitate "the provision of video content to viewers through digital TV infrastructure."  '336 Patent at Col. 1, ln. 17-18.[3]  Specifically, it relates to a method for "converting, navigating and displaying video content uploaded from the Internet on a digital TV video-on-demand platform."  Id. at Col. 1, ln. 19-21.  The patent includes eleven claims, out of which Claim 1 is independent and Claims 2-10 are dependent.  See id. at Col. 21-22.

On April 9, 2014, Plaintiff filed a Complaint against Defendants Oceanic Time Warner Cable, LLC, Time Warner Cable, Inc., Time Warner Entertainment Company, LP[4] (collectively, "TWC"), and Hawaiian Telcom, Inc. ("HTI") (collectively,

---

[2] "Video-on-demand" is defined in the Amended Complaint as "delivery of [] video content predicated upon a specific request by the user or customer."  Am. Compl. ¶ 15, ECF No. 100.

[3] Copies of the '336 Patent appear throughout the record (for example, as Exhibit A to the Amended Complaint, at ECF No. 100-1).  For the sake of brevity, the Court omits the numerous applicable CM-ECF citations when referring to the patent text, excerpts of which it identifies using standard column and line references.

[4] Time Warner Entertainment Company, LP has been dismissed from this action.  ECF No. 94.

"Defendants"). Compl., ECF No. 1.  The Complaint was amended on December 5, 2014.  Am. Compl., ECF No. 100.  The Amended Complaint accuses Defendants of infringing the '336 Patent by "making, using, offering for sale and selling the '336 patent's claimed method for converting, navigating and displaying video content in connection with their providing, selling and offering for sale digital television services."  Id. ¶ 22.  Defendants deny that they infringe the '336 Patent.  Def. HTI's Answer and Affirmative Defenses to Plf. BBiTV's Am. Compl. ¶ 22, ECF No. 104; Def. TWC's Answer to Am. Compl. ¶ 22, ECF No. 106.

Pursuant to the parties' stipulation, the Court ordered the severance of the cases against TWC and HTI on April 16, 2015. The severed cases were consolidated "for all pre-trial purposes, including claim construction."  Stipulation and Order at 2, ECF No. 164.  Following an off-the-record technology tutorial, held on June 3, 2015, and a Markman hearing, held on June 4, 2015, the Court issued its Claim Construction Order on June 24, 2015. ECF No. 290.

Following correspondence from the parties, the Court issued a Minute Order on August 4, 2015 outlining the number of permissible summary judgment motions.  ECF No. 432.  In the interests of judicial economy and pursuant to Federal Rules of Civil Procedure 1 and 16, the Court permitted each party to file one summary judgment motion regarding patent validity.  In

addition, each Defendant was permitted to file one summary judgment motion regarding patent infringement, and Plaintiff was permitted to file one summary judgment motion regarding patent infringement with respect to each Defendant.  Id. at 2.

The instant motion relates to the validity of the '336 Patent.  On August 10, 2015, HTI filed its Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101, ECF No. 463 ("HTI's MSJ"), and a Concise Statement of Facts attached thereto, ECF No. 465 ("HTI's CSF").  HTI's motion challenges that the '336 Patent is invalid as related to ineligible subject matter under 35 U.S.C. § 101.[5]

On August 27, 2015, Plaintiff filed its Memorandum in Opposition to HTI's MSJ, ECF No. 559 ("Plf.'s Opp. to HTI's MSJ"), and a Concise Statement of Facts attached thereto, ECF No. 560 ("Plf.'s CSF - HTI's MSJ").

---

[5]On the same date, TWC filed its Motion for Summary Judgment Regarding Invalidity of U.S. Patent No. 7,631,336, ECF No. 474 ("TWC's MSJ"), and a Concise Statement of Facts attached thereto, ECF No. 475 ("TWC's CSF").  TWC's motion challenges first that the '336 Patent is invalid as related to ineligible subject matter under 35 U.S.C. § 101, and second, that the '336 Patent is invalid as "anticipated" or "obvious" under prior art, pursuant to 35 U.S.C. §§ 102, 103.

Because Plaintiff's cases against HTI (Civ. No. 14-00169 ACK-RLP) and TWC (Civ. No. 15-00131 ACK-RLP) are now severed, the Court disposes of TWC's motion by a separate Order to be filed concurrently with the instant Order. For clarity, however, the Court notes that its analyses of HTI and TWC's challenges under 35 U.S.C. § 101 are substantially similar.

On September 3, 2015, HTI filed its Reply in Support of Its MSJ, ECF No. 606 ("HTI's Reply").  Hearings were held on TWC's MSJ and HTI's MSJ on September 17, 2015.[6]

## STANDARD

### I.  Summary Judgment Standard

A party is entitled to summary judgment on any claim or defense if it can be shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Maxwell v. Cnty. of San Diego, 697 F.3d 941, 947 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by either "citing to particular parts of materials in the record" or "showing that the materials cited do

---

[6]The Court notes that the parties also filed a series of Daubert motions related to experts in this case on September 4, 2015.  One such motion filed by TWC seeks to exclude the testimony of Plaintiff's technical expert, David Wachob ("Wachob"), "on the issue of priority."  See TWC's Mot. to Exclude Expert Testimony of David Wachob on the Issue of Priority under Daubert and Fed. R. Evid. 702, ECF No. 617.

At the hearing of September 17, 2015, the Court asked TWC's counsel whether TWC sought to preclude consideration of Wachob's testimony in conjunction with TWC's summary judgment motion. TWC's counsel stated that TWC was not challenging Wachob's expert qualifications and that the Court did not need to consider its Daubert motion as to Mr. Wachob before ruling on its summary judgment motion.  Accordingly, the Court has deferred consideration of TWC's Daubert motion as to Mr. Wachob.

The parties' remaining Daubert motions relate to damages and infringement experts and therefore do not need to be resolved prior to the instant Order.  See Minute Order of Sept. 10, 2015, ECF No. 664.

not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." United States v. Arango, 670 F.3d 988, 992 (9th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Scott v. Harris, 550 U.S. 372, 380 (2007).

The movant has the burden of persuading the court as to the absence of a genuine issue of material fact.  Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010).  If the movant satisfies its burden, the nonmovant must present evidence of a "genuine issue for trial," Fed. R. Civ. P. 56(e), that is "significantly probative or more than merely colorable,"[7] LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted). When evaluating a motion for summary judgment, the court must

---

[7] The Ninth Circuit has explained that "[l]egal memoranda and oral argument, in the summary-judgment context, are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment."  Flaherty v. Warehousemen, Garage and Service Station Emp. Local Union No. 334, 574 F.2d 484, 486 n.2 (9th Cir. 1978).  A "conclusory, self-serving affidavit" that lacks detailed facts and supporting evidence also does not create a genuine issue of material fact. F.T.C. v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010).

"view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott, 550 U.S. at 378.

## II. Standards Related to Patent Eligibility Under 35 U.S.C. § 101

Issues of patent-eligible subject matter under 35 U.S.C. § 101 ("Section 101") are questions of law.  CyberSource Corp. v. Retail Decisions, Inc., 654 F.3d 1366, 1369 (Fed. Cir. 2011). To the extent that the Court must resolve underlying questions of fact related to eligibility, they must be proven by clear and convincing evidence.  See, e.g., Affinity Labs. of Texas, LLC v. DirecTV, LLC, 2015 WL 3764356 * 16 (W.D. Tex. July 7, 2015); Kickstarter, Inc. v. Fan Funded, LLC, No. 11 Civ. 6909 (KPF), 2015 WL 3947178 * 5 n. 7 (S.D.N.Y. June 29, 2015).  Defendants, as the moving parties, bear the burden of establishing that the claims are patent-ineligible under Section 101.  See, e.g., Modern Telecom Sys. LLC v. Juno Online Servs., Inc., No. SA CV 14-0348-DOC (ANx), 2015 WL 1240182 * 7 (C.D. Cal. Mar. 17, 2015).

Courts disagree regarding whether a presumption of eligibility should apply in Section 101 cases.  A recent Federal Circuit concurrence stated that "no presumption of eligibility attends the section 101 inquiry." Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 717 (Fed. Cir. 2014) (Mayer, J., concurring).

7

District courts have taken different approaches. Compare, e.g.,
Tranxition, Inc. v. Lenovo (U.S.) Inc., No. 3:12-cv-01065-HZ,
2015 WL 4203469 * 4 (D. Or. July 9, 2015) (declining to apply
presumption of eligibility in Section 101 challenge) with
Exergen Corp. v. Brooklands Inc., Civil Action No. 12-12243-DPW,
2015 WL 5096464 * 2 (D. Mass. Aug. 28, 2015) (applying
presumption of eligibility in Section 101 challenge but noting
that it "has less significance in the context of a largely legal
determination"). Given the most recent available guidance from
the Federal Circuit, the Court will assume that such a
presumption does not apply.[8]

## DISCUSSION

HTI argues in the instant motion that the '336 Patent is
invalid as directed to unpatentable subject matter under 35
U.S.C. § 101. For the reasons set forth below, the Court
agrees. Accordingly, the '336 Patent is invalid and may not be
enforced against HTI in this case.

---

[8]The Court notes that the mere fact of the patent's issuance
also is not dispositive. The Supreme Court's decision in Alice
Corp. v. CLS Bank Int'l, 134 S. Ct. 2347, 2354 (2014)
(interpreting Section 101) did not issue until June 19, 2014,
long after the December 8, 2009 date of patent issuance in this
case. Compl. Ex. 1, ECF No. 1-1.
   As the USPTO plainly did not have the benefit of Alice and
its progeny when it issued the '336 Patent, there would seem to
be little sense in presuming that the '336 Patent complies with
present case law limitations on the scope of patent eligibility.

Under 35 U.S.C. § 101, an invention is eligible for patenting if it fits into one of four subject-matter categories: processes, machines, manufactures, and compositions.  The Supreme Court has recognized three implicit exclusions from eligible subject matter: "laws of nature, natural phenomena, and abstract ideas."  Alice, 134 S. Ct. at 2354 (citation omitted).  The latter exclusion, "abstract ideas," is relevant here.

To determine whether an invention impermissibly claims a law of nature, natural phenomenon, or abstract idea, courts undertake a two-step test.  First, they must determine "whether the claims at issue are directed to one of those patent-ineligible concepts."  Id. at 2355 (citing Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1296-97 (2012)).[9]

If so, courts next "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  Id. (citation omitted).  This second step was described in Alice as a "search for an 'inventive concept' – i.e., an element or combination of elements that is 'sufficient to ensure that the patent in

---

[9]Mayo applied to the category of "laws of nature," in the factual context of a method for calibrating drug dosing.  See 132 S. Ct. at 1290-91.  Alice applied to the category of "abstract ideas," in the factual context of computerized intermediated transactions.  See 134 S. Ct. at 2350.

practice amounts to significantly more than a patent upon the ineligible concept itself.'"  Id. (quoting Mayo, 132 S. Ct. at 1294, 1298).

The Supreme Court explained that the second step of the Alice test is designed to ensure that a patent reflects "more than a drafting effort designed to monopolize the abstract idea."  Id. at 2347 (citation and alteration omitted). Recognizing that all inventions depend, at some level, on abstract concepts, courts are nonetheless to invalidate patents that would "t[ie] up the future use of these building blocks of human ingenuity."  The Supreme Court has cautioned that doing otherwise would threaten the "pre-emption" of further innovation through the operation of patent monopolies on abstract ideas. Id. at 2354-55 (quotation omitted).[10]

In the wake of Alice, the Federal Circuit has observed that "any given analysis in a § 101 'abstract idea' case is hardly a

_____

[10]The Court notes that this policy consideration regarding the preemption of inventive ideas is a "concern driving the judicial exception[]" to patentability.  "[C]ourts do not use preemption as a stand-alone test for eligibility," and "the absence of complete preemption does not guarantee that a claim is eligible."  U.S. Patent & Trademark Office, July 2015 Update: Subject Matter Eligibility * 8 (July 20, 2015) (citations omitted); see also, e.g., Personalized Media Commc'ns, LLC v. Amazon.com, Inc., Civil Action No. 13-1608-RGA, 2015 WL 4730906 * 6 (D. Del. Aug. 10, 2015) (preemption is an "important policy concern" but is not itself "the test for patent eligibility"). As in the instant Order, considerations of preemption are often subsumed within courts' discussions of whether inventions present sufficient "inventive concepts" under Alice.

clear guidepost for future cases arising under § 101 – each case stands on its own." Versata Dev. Grp., Inc. v. SAP Am., Inc., 793 F.3d 1306, 1336 (Fed. Cir. 2015).  Nonetheless, certain general principles are clear.  For example, mathematical algorithms, even when executed on computers, are unpatentable abstract ideas.  See Gottschalk v. Benson, 409 U.S. 63, 64 (1972).  Certain fundamental economic and business practices are also unpatentable abstract ideas, even when computers are used to implement them.  See Bilski v. Kappos, 561 U.S. 593, 611 (2010) (risk-hedging strategy reduced to mathematical formula was not patent eligible); Alice, 134 S. Ct. at 1356 (same for "computer-implemented scheme" for exchanging financial obligations to mitigate risk).

In general, even if claims "recite[] various computer hardware elements," they are ineligible for patenting if they are directed simply to the "performance of an abstract business practice on the Internet or using a conventional computer." DDR Holdings, LLC v. Hotels.com, LP, 773 F.3d 1245, 1256 (Fed. Cir. 2014).  This is because "[t]he improved speed or efficiency inherent with applying an abstract idea on a computer does not provide an inventive concept." Personalized Media Commc'ns, 2015 WL 4730906 at * 9 (citation omitted).  Conversely, a patent directed to an "inventive concept for resolving [a] particular

Internet-centric problem" may not be unpatentable.  See DDR Holdings, 773 F.3d at 1259.

## I.   The '336 Patent Claims an Abstract Idea

The Court begins by considering Step 1 of the Alice analysis: identifying "the concept" of the '336 Patent and whether it claims an abstract idea.  See, e.g., Ultramercial, 772 F.3d at 715 ("Although certain additional limitations, such as consulting an activity log, add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content."); Alice, 134 S. Ct. at 2355. For the reasons discussed below, the Court finds that the '336 Patent claims an abstract idea.

As a preliminary matter, the Court summarizes the claims of the '336 Patent (of which Claims 1-4 and 7 are asserted against TWC and HTI).  Claim 1 is the only independent claim in the patent.  In summary, Claim 1 discloses:

1. A method for "automatically enabling the converting, navigating and displaying" of videos from a publisher on an "open online network" to a TV service provider for inclusion in its electronic program guide ("EPG"), by:

   a. Enabling the online uploading of videos to a Web-based content management server ("WBCMS") connected to a TV service provider's "VOD platform,"[11] along

_____

[11]The Court construed "VOD platform" at claim construction as "hardware and software used to deliver video content at the request of the subscriber."  Claim Constr. Order at 76, ECF No. 290.

with metadata specifying certain hierarchical category information related to the videos;

b. Converting the uploaded videos into standard TV digital format and storing "local instances" of the videos at video ID ("VID") addresses in the service provider's VOD platform;

c. Listing the titles of the videos in the service provider's EPG using the same hierarchical category information that was uploaded as metadata;

d. Giving TV subscribers access to the service provider's EPG to choose from among the "hierarchically-arranged titles of video content;"

e. Enabling a chosen video to be retrieved and sent to a subscriber's set-top box ("STB") after the subscriber sends his video request to the VOD platform using his remote control.

See '336 Patent at Col. 21, ln. 15-Col. 22, ln. 7.

Claims 2-4 and 7 are much shorter: Claims 2 and 3 disclose uploading videos from a user's computer and using a uniform resource locator ("URL"), Claim 4 discloses using metadata expressed as a "string of category and subcategory terms and the title delimited by standard delimiters," and Claim 7 discloses using an EPG in which users can store "bookmarks" for TV programs. See id. at Col. 22, ln. 8-24, 37-41.[12]

Following Alice, the Federal Circuit has examined Section 101 challenges to several patents that, like the '336 Patent, use computer and Internet technology to transmit and store

---

[12]The Court notes that the summary above is provided for the reader's convenience and does not purport to capture all of the precise terms used in the patent itself, which may be reviewed at ECF No. 100-1.

various media.  Although each Section 101 case "stands on its

own," Versata Dev. Grp., 793 F.3d at 1336, a review of similar

cases is instructive.  For example, the Federal Circuit recently

explained that "using categories to organize, store, and

transmit information is well-established . . . the idea of

collecting information in classified form, then separating and

transmitting that information according to its classification,

is an abstract idea that is not patent-eligible." Cyberfone

Sys., LLC v. CNN Interactive Grp., 558 Fed. App'x 988, 991-92

(Fed. Cir. 2014).

Additionally, the broad concept of using organizational and

product group hierarchies to determine prices for products and

customers is an abstract idea, even where it is implemented

using computers.  Versata, 793 F.3d at 1333-34 (noting that

patents directed to "collecting, recognizing, and storing data"

claim abstract ideas).  Similarly, a patent directed to

collecting data from documents, recognizing information within

that data, and storing it in memory claims an abstract idea,

despite the use of scanning and processing technology. Content

Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,

776 F.3d 1343, 1349 (Fed. Cir. 2014).

District court decisions in this area are also persuasive.

For example, a patent directed to the "idea of compiling,

organizing, and transmitting information, using identification

codes as shorthand for that information" was found to be directed to an abstract idea. OpenTV, Inc. v. Apple, Inc., 2015 WL 1535328 * 3 (N.D. Cal. Apr. 5, 2015).  So too was a patent found to claim an abstract idea where it was directed to "converting and forwarding messages, so that the messages are sent in a format and layout in which they can be received by a recipient."  TriPlay, Inc. v. WhatsApp Inc., 2015 WL 1927696 * 13 (D. Del. Apr. 28, 2015).  Additionally, patents premised on using combinations of categorical information to organize videos and creating user "bookmarks" saved through a "media-on-demand server" were found to claim abstract ideas.  Netflix, Inc. v. Rovi Corp., Case No. 11-cv-6591 PJH, 2015 WL 4345069 * 9, 18 (N.D. Cal. July 15, 2015).

HTI urges that the '336 Patent claims "are directed to the abstract idea of hierarchical ordering based on metadata to facilitate the display and locating of video content."  Mem. in Support of HTI's MSJ at 16, ECF No. 463-1.

Plaintiff's brief offers no suggestion of what the patent does claim, if not an abstract idea.[13]  Plaintiff briefly complains that Defendants' descriptions of the patent claims are

---

[13]The Court asked Plaintiff's counsel at the hearing of September 17, 2015 what the '336 Patent does claim, if not an abstract idea.  He eventually indicated that Plaintiff's position is that the patent does not claim an abstract idea and is instead a "technical solution," as described in the patent specification.

"oversimplifications," but it does not delineate what, if anything, Defendants leave out. See Plf.'s Opp. to HTI's MSJ at 7-9, ECF No 559. Plaintiff also argues that HTI should not be permitted to rely on statements made by its infringement expert, Joel Williams, regarding the "heart" of the invention; however, this does little to inform the Court's analysis of what *should* be considered the fundamental concept of the '336 Patent. See id. at 7-9.[14]

Instead, most of Plaintiff's briefing simply concerns the second step of the Alice test, arguing that the Court need not decide whether the patent is directed to an abstract idea (under Alice step one) if Defendants fail to meet their burden to show a lack of "inventive concept" (under Alice step two). See id. at 9-10.

Notwithstanding Plaintiff's limited response, the Court undertakes to evaluate whether the '336 Patent appears to claim

---

[14]The Court notes that while its holding does not rest on Mr. Williams' testimony exclusively, Plaintiff does not present a compelling reason why the Court could not consider his statements as relevant evidence. As HTI points out in its Reply, Mr. Williams is Plaintiff's infringement expert, claiming to have expert knowledge of the '336 Patent. See HTI's Reply at 1 n.1, ECF No. 606.

The fact that Mr. Williams is Plaintiff's patent infringement (not patent invalidity) expert and indicated in his deposition that he would not be testifying regarding comparisons to prior art may go to the *weight* that the Court accords his testimony on that topic. It does not, however, make his testimony inadmissible or categorically irrelevant.

an abstract idea.  The Court previously identified the following
as the "novel" underlying idea of the invention: "creating a
method for uploading videos via Internet with accompanying
metadata, which allows the videos to be automatically listed in
a cable company's EPG for viewer selection."  Claim Constr.
Order at 32-33, ECF No. 290.  This is essentially the abstract
idea identified by HTI: "using the same hierarchical ordering
based on metadata to facilitate the display and locating of
video content."

The same understanding of the patent's basic concept is
consistent with the Patent Trial and Appeal Board ("PTAB")
Decision Denying Covered Business Method Review of the '336
Patent, which noted:

> [T]he problem in the prior art described
> and addressed by the '336 patent is the
> alleged lack of 'capability for Internet uploading
> and automatic listing in any VOD EPG' . . .
> [t]he problem is addressed through '*listing
> the title of the video content in the [EPG]
> using the same categories as those specified
> in the metadata uploaded along with the video
> content.*

Decision Denying Covered Business Method Patent Review * 12 CBM
2014-00189 (Apr. 1, 2015) (alterations omitted and emphasis
added) (citing '336 Patent at Col. 3, ln. 62-64 and Preliminary
Response at 16).[15]

---

[15]The same understanding of the invention was also reflected
in a letter from the patentee to the USPTO, wherein he indicated

The PTAB concluded that the '336 Patent is a "covered business method patent" and not a "technological invention," as it is directed toward "primarily a content organization problem, not a technical problem."  The PTAB was thus "not persuaded that [it] is a technical solution to a technical problem."  Id.[16]  As HTI points out, Plaintiff's technical infringement expert, Joel Williams, offered a similar description of the "heart" of the invention at his deposition: "automating steps that were conventionally performed" and "transferring the content."  Stroy Decl. Ex. B., Deposition of Joel William, Tr. 90:22-91:14, ECF No. 465-3.

The Court finds that the '336 Patent, consistent with the foregoing descriptions, claims an abstract idea.  As HTI argues, the patent claims the concept of "using the same hierarchical ordering based on metadata to facilitate the display and locating of video content."  To do so, the patent exploits

---

that "[a]pplicant's technical solution was for the uploaded content to be *accompanied by metadata that specified each segment's viewing order in the hierarchical ordering, then using the display orderings specified in metadata to automatically define the order of viewing the linked displays* as an immersive, drill-down viewing experience."  Response to Office Action at 4-5, ECF No. 175-9 (emphasis added).

[16]While the Court recognizes that the PTAB was analyzing the '336 Patent's qualification as a "technological invention" for purposes of deciding whether to undertake CBM review – a different legal task than the one presented – the Court nonetheless finds the foregoing passage relevant to its analysis of whether the '336 Patent claims an "abstract idea."

matches between hierarchical identifiers – uploaded at one end
of the process as metadata, and read at the other end to display
listed videos – in order to facilitate the automatic EPG listing
of videos sent to cable companies by outside publishers.  This
essentially translates hierarchical ordering information that
allows videos to be efficiently uploaded, stored, and displayed.

OpenTV is on point as persuasive authority.  There, the
court found that a patent claimed an "abstract idea of
compiling, organizing, and transmitting information, using
identification codes as shorthand for that information."  2015
WL 1535328 at * 3.  One could apply almost an identical
description to the aforesaid abstract idea behind the '336
Patent.  Also similar is In re TLI Commc'ns LLC Patent Litig.,
MDL No. 1:14md2534, 2015 WL 627858 (E.D. Va. Feb. 6, 2015),
wherein a patent for "recording, communicating and administering
digital images" through a server claimed simply an "abstract
idea of taking, organizing, classifying, and storing
photographs."

The OpenTV court noted that the problem of "how to
transmit, receive, store, and organize [] information deriving
from multiple sources is not a creature of the Internet age:
solutions to this problem date back to the invention of smoke
signals."  Id. at * 4; see also, e.g., Content Extraction, 776
F.3d at 1347 ("The concept of data collection, recognition, and

19

storage is undisputedly well-known."); Cyberfone Sys., 558 Fed. App'x at 992 (the "well-known concept" of "using categories to organize, store, and transmit information" is not patent-eligible); Market Track, LLC v. Efficient Collaborative Retail Marketing, LLC, No. 14 C 4957, 2015 WL 3637740 * 5 (N.D. Ill. June 12, 2015) (patent was directed toward abstract idea of "identifying, organizing, and presenting stored information," notwithstanding "degree of particularity" conferred by requirements for database queries, stand-alone file outputs with associated information, and file deliveries). The same principles favor a finding that the '336 Patent claims an abstract idea here.

Courts have also considered in the "abstract idea" analysis (even prior to Alice) whether the steps of a patent "can be performed in the human mind, or by a human using a pen and paper." CyberSource, 654 F.3d at 1372. Such a finding supports the conclusion that a patent claims "the types of methods that embody 'the basic tools of scientific and technological work' that are free to all men and reserved exclusively to none,' and therefore comprise a non-patent-eligible abstract idea." Id.

As in OpenTV, the Court finds that this inquiry further supports a finding that the '336 Patent claims an abstract idea. Even though the '336 Patent anticipates that its steps will be performed through computer operation, it describes a process

that a person could perform "[u]sing a pen, paper, and her own brain." OpenTV, 2015 WL 1535328 * 4; see also, e.g., Tranxition, 2015 WL 4203469 * 13 (finding that a human could perform steps of a patented method to transfer computer settings by locating the settings she wanted on the first computer, "extracting" those settings, locating where similar settings are stored on a new computer, and applying the new settings).

It is possible, for example, that a person could write down a list of categorical identifiers for a video and send the video on tape, along with the list, to a cable company, whose employees could then manually upload the video to the company's VOD platforms and use the same list of categorical identifiers to designate where the video will be displayed in subscribers' EPGs.  This was, in essence, the former state of affairs that the parties described to the Court at its Technology Tutorial of June 3, 2015.  See also Transcript of Proceedings of June 4, 2015 ("Tr.") at 13:9-15:17, 22:6-15, ECF No. 258.[17]

_____

[17] Plaintiff's claim construction brief similarly stated: "Historically, in order to upload a program to a VOD system, a content producer was required to copy each program to a video tape, which was physically delivered to the TV service provider . . . the video tape was accompanied by a document or file containing information associated with the program, such as the title of the program, the name of the series . . . the delivery of multiple programs required the use of multiple tapes and accompanying documents or files which [were] manually processed by skilled staff for entry into the VOD system . . . [the '336 Patent offered] a more streamlined,

For all of the foregoing reasons, the Court finds that the '336 Patent claims an abstract idea.

## II.   The '336 Patent Lacks a Sufficient "Inventive Concept" to Be Patent-Eligible

Having concluded that the '336 Patent claims an abstract idea, the Court considers whether it nonetheless adds a sufficient "inventive concept" to qualify as eligible subject matter under step two of the Alice test.  134 S. Ct. at 2355. The elements of the claims, either individually or in combination, must "ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself."  If not, the patent must be invalidated.  Id. (quotations omitted).

"Conventional or obvious" implementing activity does not "transform an unpatentable principle into a patentable process." Bilski, 561 U.S. at 610; see also, e.g., OpenTV, 2015 WL 1535328 at * 6 (where an invention "does not go beyond the 'routine or conventional use' of existing electronic components . . . [t]he fact that a company may be the first to successfully apply an abstract idea within a new technological context does not transform the abstract idea into something tangible and

---

faster, and cheaper process that automatically added the content to the VOD database and menu scheme and did not require the use of any physical tapes."
Plf.'s Claim Constr. Br. at 3-4, ECF No. 174.

patentable") (citation omitted).[18]  It also is not enough for a patent to recite the use of computer hardware or software that would "limit the use of [the idea] to a particular technological environment," such as VOD.  Accenture Global Servs., GmbH v. Guidewire Software, Inc., 728 F.3d 1336 (Fed. Cir. 2013) (citations omitted).  "Given the ubiquity of computers . . . wholly generic computer implementation is not generally the sort of additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself."  Alice, 134 S. Ct. at 2358 (alterations and citations omitted).

Instead, to contain an inventive concept, computer system technology must do more than perform "well-understood, routine, and conventional activities previously known to the industry." Id. at 2359 (alteration omitted); see also Content Extraction,

---

[18]In the same vein, the "novelty" of an idea is not enough in itself to confer patentability, where the novelty does not exceed the "inventive concept" limitations discussed below. See, e.g., Diamond v. Diehr, 450 U.S. 175, 188-89 (1981) ("The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter."); Personalized Media Commc'ns, 2015 WL 4730906 at * 3, 6 (D. Del. Aug. 10, 2015) (finding a lack of sufficient inventive concept and observing that the fact "that the method was a new means of transmitting information is not relevant," as "[p]racticing an abstract idea in a novel way is still practicing an abstract idea").
    Plaintiff cannot, therefore, claim an "inventive concept" that qualifies for Section 101 subject matter eligibility simply by parroting the Court's identification of the "novelty" of the invention in its Claim Construction Order.

776 F.3d at 1348. District courts examining inventions implemented through the use of computers and Internet technology, post-Alice, have found it useful to compare the Federal Circuit decisions of Ultramercial and DDR Holdings in this regard. See, e.g., Netflix, 2015 WL 4345069 at * 5. The Court does the same here.

In the first case, Ultramercial, the Federal Circuit found invalid under Section 101 a patent for a method that allowed a user to view copyrighted media (such as a television show) online, free of charge, in exchange for viewing an advertisement online. 772 F.3d 709. As here, the patent purported to recite a detailed series of steps: (1) receiving the copyrighted media from a content provider, (2) selecting an ad, (3) offering the media on the Internet, (4) restricting public access to the media, (5) offering the media to the customer in exchange for watching the selected ad, (6) receiving a request to view the ad from a user, (7) facilitating display of the ad, (8) allowing the consumer to access the media, (9) allowing the consumer access to the media if the ad is interactive, (10) updating the activity log, and (11) receiving payment from the ad sponsor. Id. at 714-15.

The Federal Circuit first concluded that the patent was drawn to the abstract idea of "showing an advertisement before delivering free content." Id. at 715. Second, in its search

24

for an "inventive concept," the court concluded that some of the patent's steps were "not previously employed in this art." Nonetheless, they were "conventional steps, specified at a high level of generality, which is insufficient to supply an inventive concept."  The patent was thus invalid.  Id. at 716.

In contrast, in DDR Holdings, the Federal Circuit upheld the patent eligibility of a software patent that generated a "hybrid website" when a host website visitor clicked an advertisement that would normally transport him to the advertiser's website.  773 F.3d 1245.[19]  The hybrid website retained the "look and feel" of the host website but contained relevant product information from the advertiser's website.  It even allowed for purchase over the hybrid website, without forcing the user to actually leave the host website.  This prevented the host website from losing its audience.  Id. at 1248-49.

Without clearly addressing whether the patent addressed an abstract idea, the Federal Circuit concluded that the DDR Holdings patent included an "inventive concept" under Alice. Instead of "merely recit[ing] the performance of some business practice known from the pre-Internet world along with the

---

[19]The Court notes that DDR Holdings appears to be the only post-Alice case in which the Federal Circuit rejected a patent eligibility challenge under Section 101.  In thirteen out of fourteen cases presenting such challenges since Alice, the Federal Circuit has found the patent at issue to be invalid.

requirement to perform it on the Internet," the patent's solution was "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." Id. at 1257.

Moreover, and in contrast to Ultramercial, the court found that the claims "specify how interactions with the Internet are manipulated to yield a desired result – a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink. Instead of the computer network operating in its normal, expected manner by sending the website visitor to the third-party website . . . the claimed system generates and directs the visitor to the [] hybrid web page." Id. at 1258-59.

The DDR Holdings court also emphasized that the invention did "not attempt to preempt every application of the idea" of software used to create hybrid websites, covering only one "specific way to automate the creation of a composite web page." This eliminated the preemption of ideas concern that was presented in Alice. Id. at 1259.

Plaintiff here argues that the "inventive concept" of the '336 Patent is provided by steps (a) and (c) of Claim 1. This is so, Plaintiff argues, because "step (a) of claim 1 provides specific details on how the purported abstract idea can be implemented in practice," and "step (c) further clarifies that

the EPG of the VOD platform uses 'the same hierarchically-arranged categories and subcategories as used in the uploaded metadata.'"  Plf.'s Opp. to HTI's MSJ at 10-11, ECF No. 559.

The Court notes that the text of steps (a) and (c) of the '336 Patent describe essentially the steps of (1) uploading video content with metadata prescribing hierarchical categories, and (2) listing video titles in cable companies' EPGs based on the same hierarchical categories.  The full text of these steps appears in the '336 Patent at Col. 21, ln. 27-34, 42-48, ECF No. 100-1.

Plaintiff argues that these steps of the claims provide "specific details regarding how [the] idea may be implemented, rather than broad, generic recitations."  Supposedly, this makes the claims "eligible for patenting."  Plf.'s Opp. to HTI's MSJ at 11, ECF No. 559.

First, HTI argues – and the Court agrees – that the '336 Patent claims do not tend to provide the level of "specific details of implementation" that Plaintiff suggests.  This is true even in steps (a) and (c).  Rather, the claims consistently refer to the patent's computerized steps at "a high level of generality, which is insufficient to supply an inventive concept."  Ultramercial, 772 F.3d at 716.

For example, the patent describes "enabling [] uploading" of videos, (Claim 1(a)), converting [] content" (Claim 1(b)),

27

"listing [] title[s]" (Claim 1(c)), "providing . . . access to the [EPG" (Claim 1(d)), and "enabling retrieval of the selected video content" (Claim 1(e)).  These are broad terms that would seem to be "well-understood, routine, conventional activities previously known to the industry," particularly given that the claims provide them no more explicit definition.  Alice, 134 S. Ct. at 2358 (alterations and citations omitted); see also, e.g., OpenTV, 2015 WL 1535328 at * 3 (finding that claims using terms such as "broadcasting," "storing," "assembling," "associating," "receiving," and "transmitting," related to identification codes, were drawn to abstract ideas that did not "go beyond the 'routine or conventional use' of existing electronic components"); Tranxition, 2015 WL 4203469 at * 7 (finding "nothing at all 'specific'" about patent language describing identifying where configuration settings are stored, building a list of settings to transfer, fetching the settings from a computer, and manipulating the settings to match the format on another computer).

Moreover, the fact that a patent provides specific details of implementation is not enough to secure patent eligibility if those "details" continue to encompass merely "generic computer implementation" and "routine activities."  Alice, 134 S. Ct. at 2358-59.  Plaintiff cites DDR Holdings in support of its position, but a key consideration in that case was that the

28

patent claims "specif[ied] how interactions with the Internet are manipulated to yield a desired result" that was different from "the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink."  773 F.3d at 1258.

Here, Plaintiff points to no element of the claims that call for computer or Internet technology to behave in an unconventional manner.  Indeed, the invention relies on the Internet and computer technology to perform in a normal manner, "using categories to organize, store, and transmit information." Cyberfone Sys., 558 Fed. App'x at 992.

Moreover, DDR Holdings arose in a factual context where the steps performed to build a hybrid website could *only* be performed by a computer.  Here, in contrast, the steps of the patent could be performed (more slowly) by hand.  Plaintiff cites cases including Execware, LLC v. BJ's Wholesale Club, Inc., 2105 U.S. Dist. LEXIS 92127, *53-54 (D. Del. July 15, 2015), wherein a patent was found eligible under Section 101 where it was "not directed simply to using a computer to perform the abstract idea more quickly than could be done without a computer."  That seems, however, to have been the point of the '336 Patent.  As the parties explained to the Court at the technology tutorial in this case, and as discussed above, the '336 Patent seeks to automate, using computers, a process that formerly was accomplished manually.

Perhaps anticipating this concern, Plaintiff argues that the '336 Patent nonetheless qualifies for patent eligibility under Section 101 because Claim 1 involves "particular components" that are not "ordinary computer components."  Plf.'s Opp. to HTI's MSJ at 13, ECF No. 559.[20]  The specific components highlighted by Plaintiff in its brief are the set-top box ("STB"), VOD platform, and Web-based Content Management Server ("WBCMS").  See id. at 13-15.

It appears that Plaintiff's argument may be premised on the pre-Alice "machine or transformation" test used in Bilski, 561

---

[20]Courts need not analyze separately every claim in a patent where one is "representative," because "all the claims are 'substantially similar and linked to the same abstract idea.'" Content Extraction, 776 F.3d at 1348.  Such is the case here, where Claim 1, the only independent claim of the patent, is representative of the abstract idea presented in the entire patent and links all of the dependent claims.  Plaintiff does not appear to suggest otherwise and does not argue that separate inventive concepts are presented in any of the dependent claims.

For the sake of clarity, however, the Court finds that all of the asserted claims (Claims 1-4 and 7) are not patent eligible under Section 101, for the reasons set forth herein as to Claim 1.  The remaining claims simply recite the use of additional conventional computing technology (user computers, URLs, "standard delimiters" for metadata, and server-stored "bookmarks") without prescribing any atypical, unique, or even particularly specific function for those components.

The Court observes in particular that the '336 Patent claims do not identify *how* the foregoing components work, on a technical level; instead, they simply recite that these components may be used according to the method outlined in Claim 1.  See, e.g., Tranxition, 2015 WL 4203469 at *16 (finding that dependent claims, including one involving "browser bookmarks," reflected "little more than an exercise in creatively re-naming conventional computer functions" and failed for the same reasons as the independent claims).

U.S. at 611.  In that case, the Federal Circuit had explained that a patented process is patent-eligible under Section 101 if it "(1) is tied to a particular machine or apparatus, or (2) it transforms an article into a different state or thing."  The court described that inquiry at the time as "the sole test governing § 101 analyses."  In re Bilski, 545 F.3d 943, 954 (Fed. Cir. 2008).  On appeal, the Supreme Court clarified that the machine-or-transformation test is not the sole question governing Section 101 analyses, but can be considered an "important and useful clue" regarding patentability.  Bilski, 561 U.S. at 603.  The test was subsequently used by the Federal Circuit, pre-Alice, to uphold a patent related to a GPS receiver.  SiRF Tech., Inc. v. Int'l Trade Comm'n, 601 F.3d 1319, 1332-33 (Fed. Cir. 2010).

If Plaintiff's argument is *not* intended to invoke the Bilski machine-or-transformation test – a point never made clear in Plaintiff's Opposition – its remaining value would appear to be simply distinguishing Alice's mandate that "generic" computer activity does not provide a sufficient inventive concept for patent eligibility.  134 S. Ct. at 2358.[21]

---

[21]Plaintiff's counsel indicated at the Court's hearing of September 17, 2015 that its brief had not intended to invoke the machine-or-transformation test.  However, he recognized that the test is "important" and asserted that Plaintiff believes that it supports Plaintiff's position.

Whether it is directed to distinguishing Alice or meeting
the machine-or-transformation test, the Court is not persuaded
by Plaintiff's argument.  In general, a machine "must do more
than simply play a significant part in permitting the claimed
method to be performed in order to supply the required inventive
concept." Netflix, 2015 WL 4345069 at * 55 (quotation omitted);
see also Accenture, 728 F.3d at 1345 ("[G]eneralized software
components arranged to implement an abstract concept on a
computer . . . do not provide sufficient additional features
[for patentability].").

"If identifying a particular *function* of a machine were
enough to establish patentability under the 'machine or
transformation' test, then any patentee could evade invalidity
by using specific-sounding language to describe a general
purpose computer." Netflix, 2015 WL 4345069 at * 55 (finding
that a "media-on-demand system" and "media-on-demand server"
were nothing more than conventional server and server-client
equipment, and therefore properly considered to be generic
computer parts implementing an abstract idea).  For example, in
Alice, claims were held invalid where "what petitioner
characterizes as specific hardware – a 'data processing system'
with a 'communications controller and data storage unit,' for
example – is purely functional and generic." 134 S. Ct. at
2360.

32

As HTI argues, it seems that Plaintiff's arguments here amount to little more than characterizing conventional computer components (and the claims' combination of steps for using them) according to their "specific-sounding" functions.  Plaintiff's short discussions in its brief of the STB, VOD platform, and WBCMS offer only the following evidence:

1. Branko Gerovac ("Gerovac"), an expert witness for TWC,[22] described the STB in his deposition as "includ[ing] a general purpose computer as a component of its hardware," and as a "computer that includes other components that allow it to be used in the context of a cable system."

2. According to Gerovac, a VOD platform "would" or "could" be "comprised of general purpose computers of the kind that an individual would use," and "[i]n terms of software," a VOD platform "would be configured for a special purpose [of] providing Video on Demand services."

3. The WBCMS, according to Plaintiff, has a "specific and unique network connection."  This is because, according to the patent, it is "connected to the VOD platform of the discrete digital TV service provider network" as well as the open, online network by which it receives videos.

Plf.'s Opp. to HTI's MSJ at 13-15, ECF No. 559 (citing Jones Decl. Ex. 8 at Tr. 251:13-252:25, ECF No. 560-9; '336 Patent at Col. 21, ln. 27-34).

The Court pauses to note that the only element of the patent that Plaintiff's CSF claims "did not exist at the time of the invention" is the WBCMS.  Plf.'s CSF – HTI's MSJ ¶¶ 7-9, ECF No. 560.  In addition, when he was asked at the Court's

_____

[22]The Court notes that Gerovac is TWC's expert, not HTI's.  However, HTI did not object to Plaintiff's reliance on Gerovac's opinions in its Opposition to HTI's motion.

September 17, 2015 hearing whether the '336 Patent relies on any technological components that were not already known in the art, Plaintiff's counsel identified only the WBCMS.

Nonetheless, even considering all of Plaintiff's evidence regarding the STB, VOD platform, and WBCMS, such evidence does not raise genuine issues of material fact sufficient to defeat summary judgment. First, Gerovac merely confirms that the STB and VOD platform include general purpose computer components. That does not, in itself, suggest or explain that STBs and VOD platforms should be considered something other than conventional computing technology for purposes of the Court's analysis.

Second, it is unhelpful that Gerovac testifies that the VOD platform's software is configured for a "special purpose [of] providing Video on Demand services." That software has a particular task does not mean it is not conventional computing technology. See Intellectual Ventures I LLC v. Capital One Bank (USA), 792 F.3d 1363, 1370 (Fed. Cir. 2015) (upholding invalidity where computer components relied on software "tasked with providing web pages to and communicating with the user's computer").

Third, with respect to the WBCMS, Plaintiff's arguments are similar to those rejected by the courts in Intellectual Ventures, Netflix, and In re TLI Communications. "Specific-sounding" language regarding conventional computer components'

34

functions, such as their ability to connect to VOD platforms and online networks, does not confer patent eligibility.  See In re TLI Commc'ns, 2015 WL 627858 at * 10 (cautioning that Section 101 analyses should "not be obscured by [] convoluted 'patent-ese'").

In Intellectual Ventures, the Federal Circuit rejected plaintiff's argument that an inventive concept was provided by the use of an "interactive interface that manages web site content."  Despite its unique nomenclature, the interface was simply "a generic web server with attendant software."  792 F.3d at 1370.  Similarly, in Netflix, the court found "no basis on which to find that the recited 'media-on-demand system' is anything other than a generic server/client system, nor that the 'media-on-demand server' is anything other than a generic server."  2015 WL 4345069 * 19.  Notably, the recited server claimed "communications link[s]" to multiple sets of "client devices," allowing for the "ability to receive delivered media (such as a movie) across a network."  Id.  This is similar to the functionality highlighted by Plaintiff.  Moreover, as HTI points out in its Reply, this connectivity is the normal and anticipated use of a conventional server.[23]

---

[23]Although not raised in its brief, Plaintiff's CSF points out that HTI's expert, Anthony Wechselberger, stated in his deposition that "WBCMS" is a term that he had not previously heard, and which lacks context outside of the '336 Patent.

In re TLI Communications also involved a server used to record and administer digital media, which the court found amounted to nothing more than conventional computing technology. 2015 WL 627858 at * 12-13.  Similarly to the WBCMS here, the server in that case received digital images and classification information inputted by users, extracted the data and classification information, and stored the digital images according to the classification information.  The court found that the server's functions of transmitting, extracting, and storing information and media were those of a "generic computer performing conventional functions."  Id. at 14.

So too here.  The WBCMS in the '336 Patent receives videos uploaded with metadata for categorization over the Internet, converts the videos to standard TV digital format to be stored as "local instances" at VID addresses in cable providers' video content databases, and is otherwise a connected part of the providers' VOD platforms in facilitating the display of programs selected by subscribers.  See '336 Patent at Col. 21, ln. 27-Col. 22, ln. 7.  As the Federal Circuit has made clear, however, "data collection, recognition, and storage" are "undisputedly

---

Plf.'s CSF – HTI's MSJ ¶¶ 7-10, ECF No. 560 (citing Jones Decl. Ex. 11 at Tr. 101:11-20, ECF No. 560-12).
     This does not raise a genuine question of material fact. Wechselberger's testimony that he was unfamiliar with the name "WBCMS," which he does not consider a term of art, does not impact the role of the WBCMS in the patent or compel the conclusion that the WBCMS is unconventional technology.

well-known" functions for servers. They do not impart any inventive concept. Content Extraction, 776 F.3d at 1347; see also, e.g., MicroStrategy Inc. v. Apttus Corp., Case No. 3:15-cv-21-JAG, 2015 WL 4425828 * 6 (E.D. Va. July 17, 2015) (server's ability to carry out automatic archiving based on classification information was simply routine and conventional computer function).

The irony, as HTI observes, is that Plaintiff advocated for and obtained the broad claim constructions that now inform the Court's understanding of the patent. For example, Defendants advocated a claim construction for "WBCMS" that would have imported a substantial number of more specialized features from Figure 2B in the specification. See Claim Constr. Order at 61, ECF No. 290. Plaintiff, in contrast, urged a construction of "a server accessible over an online network for managing content." Id.

The Court, relying on cases such as Liebel-Flarsheim, 358 F.3d 898 (Fed. Cir. 2004) and Winbond Elecs. Corp. v. Int'l Trade Comm'n, 4 Fed. App'x 832 (Fed. Cir. 2001), adopted a construction that was similar to Plaintiff's: "a server accessible over the Internet, including the Web, for managing content." Id. at 68. A similar understanding of the patent is reflected in the deposition testimony of the inventor, who could not recall the brand or name of the WBCMS and agreed that he had

37

simply bought it "off the market."  Deposition of Milton Diaz
Perez at Tr. 776:19-777:6, ECF No. 606-4.  This construction of
the WBCMS does not appear much different from the descriptions
of the servers in the cases cited above.  Plaintiff cannot read
the claims one way at claim construction to boost the chances of
finding infringement, and then another way to avoid a finding of
invalidity.  See, e.g., Nassau Precision Casting Co. v. Acushnet
Co., 556 Fed. App'x 933, 938 (Fed. Cir. 2014) (citation
omitted).

Beyond the foregoing, the Court is unable to independently
discern some other "inventive concept" in the claims under
Alice.  As discussed above, it is not sufficiently "inventive"
to use conventional computers and the Internet to automate, as a
combined set of steps, the implementation of an abstract idea
that can be completed manually.  This is so even where a
particular inventor may be the first to do so.[24]  See, e.g.,
Content Extraction, 776 F.3d at 1347 (invalidating method for
automating data recognition and storage); Accenture, 728 F.3d at
(invalidating method for automating the generation of tasks
related to insurance claim processing using particular
software); East Coast Sheet Metal Fabricating Corp. v. Autodesk,

---

[24]For this reason, the Court is not persuaded by Plaintiff's
argument at the hearing of September 17, 2015, citing Mayo, that
a patent is viable under Section 101 simply as a "new
combination" of steps using well-known components.

Inc., Civil No. 12-cv-517-LM, 2015 WL 226084 * 10 (D.N.H. Jan. 15, 2015) ("[T]he advantage of the claimed invention is increased speed resulting from the normal operation of a generic computer . . . [however], one does not solve a problem in any given field simply by using existing technology to speed up a process once done by hand.  That is not an inventive concept; it is just what generic computers normally do.").

Finally, the Court notes that Plaintiff repeatedly claims that Alice's concern with the preemption of innovative ideas is not presented here.  Plaintiff argues that this is because the claims only "cover instances where the metadata: (i) is uploaded with the video content; (ii) over an open online network; (iii) uses the same categories and subcategories as the EPG in a VOD platform of; (iv) a closed, discrete digital TV service provider network."  Plf.'s Opp. to HTI's MSJ at 18, ECF No. 559.

However, Plaintiff never identifies -  much less provides useful evidence of - any way that publishers could transmit videos to cable companies for automated inclusion in their hierarchical VOD listings without infringing the '336 Patent. "Legal memoranda and oral argument, in the summary-judgment context, are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment."  Flaherty, 574 F.2d at 486 n.2.

Rather, as HTI points out, Plaintiff's own infringement expert appears to suggest that there are no potential non-infringing ways to accomplish the patent's result.  Infringement would occur, for example, whether videos are uploaded via the Web or file transfer protocol ("FTP"), whether the online network used for transfer is secured or open, whether the WBCMS is physically or only "logically" connected to the VOD platform, and whether the hierarchical categories and subcategories used in the EPG are exactly the same as the ones uploaded along with publishers' videos.  See HTI Reply at 17, ECF No. 606 (citing Stroy Decl. Ex A. at 154:15-155:16, 142:21-143:9, 101:21-102:7, 56:9-57:22).

This differs from a case like DDR Holdings, wherein the patent at issue covered only one "specific way to automate the creation of a composite web page" and left other methods open for innovation.  773 F.3d at 1259.  No other ways appear to be left open here to accomplish the '336 Patent's result.  At the very least, Plaintiff's briefing did not identify one for the Court.  This is contrary to Alice's prohibition on the monopolization of abstract ideas.  134 S. Ct. at 2347.

The Court pauses to note further that it does not agree with Plaintiff's counsel's suggestion at the hearing of September 17, 2015 that Plaintiff did not brief the issue of preemption.  This is incorrect.  As noted above, Plaintiff's

Opposition spends three pages discussing preemption.  <u>See</u> Plf.'s Opp. to HTI's MSJ at 17-19, ECF No. 559.  Plaintiff's counsel also referred to certain opinions of Defendants' infringement experts regarding potential non-infringing uses but admitted that such evidence was not submitted to the Court in the instant briefing.[25]

Regardless, none of the potential uses described by Plaintiff's counsel at the hearing involved the field of Internet implementation relevant to the '336 Patent; rather, those uses relied on satellite, facsimile, and video tape transmission to cable providers.  District courts have evaluated preemption considerations "in light of the field to which the patent is directed."  <u>Amdocs (Israel) Ltd. v. Openet Telecom, Inc.</u>, 56 F. Supp. 3d 813, 818 (E.D. Va. Oct. 24, 2014); <u>see also, e.g.</u>, <u>Tranxition</u>, 2015 WL 4203469 at *18.

Here, by the patent's own terms, the relevant field is "upload[ing] from the Internet."  <u>See</u> '336 Patent at Col. 1, ln. 20.  So understood, the operative field may be completely preempted by Plaintiff's patent.  <u>See</u> <u>Personalized Media Commc'ns</u>, 2015 WL 4730906 at * 4, 8 ("Plaintiff claims that the

---

[25]Plaintiff's counsel also sent a letter to the Court dated September 22, 2015, offering to provide copies of the foregoing infringement expert opinions.  ECF No. 757.  Defendants sent letters of response on September 24-25, 2015, and Plaintiff sent a reply letter on September 25, 2015.  ECF Nos. 763, 770, 771. The Court declined Plaintiff's counsel's offer for reasons addressed by minute order on September 29, 2015.  ECF No. 774.

patent does not preempt all methods of updating operating instructions, but it seems to me that it does preempt all methods of doing so remotely . . . the preemption concern is enormous.  Plaintiff contends that the patent is infringed essentially every time a purchase is made over the Internet.")[26]

Accordingly, the Court agrees with HTI that the '336 Patent impermissibly relates to unpatentable subject matter under 35 U.S.C. § 101.  This is so whether the patent's elements are considered individually or in combination.  See Alice, 134 S. Ct. at 2355 (citing Mayo, 132 S. Ct. at 1294).  Recognizing the recency of binding precedent and the limited scope of case law in this area, it nonetheless appears that the '336 Patent claims an abstract idea without sufficient inventive concept under Alice.  It is therefore ineligible for patenting under Section 101, and invalid for enforcement against HTI.

---

[26]See also, e.g., Open Text S.A. v. Alfresco Software Ltd., Case No. 13-cv-04843, 2014 WL 4684429 * 4-5 (N.D. Cal. Sept. 19, 2014) ("[Plaintiff] argues that the asserted claims 'contain limitations tying them to specific ways of using computers' . . . '[a]t best, that narrowing is an attempt to limit the use of the abstract . . . idea to a particular technological environment, which has long been held insufficient to save a claim in this context.'"); In re TLI Commc'ns, 2015 WL 627858 at * 15 ("[D]isclosure of structure and concrete components is insufficient when those disclosures are generic and do not operate as meaningful limitations on the boundaries of the patent.").

## CONCLUSION

For the reasons set forth above, the Court finds that the '336 Patent is invalid under 35 U.S.C. § 101. Accordingly, the Court GRANTS Defendant Hawaiian Telcom's Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101, ECF No. 463. Plaintiff's claims of infringement of the '336 Patent are DISMISSED with prejudice.[27]

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 29, 2015.

_Alan C. Kay_
Alan C. Kay
Sr. United States District Judge

Broadband iTV, Inc. v. Hawaiian Telcom, Inc., Civ. No. 14-00169 ACK-RLP, Order Granting Defendant Hawaiian Telcom, Inc.'s Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 101.

---

[27]Based on the foregoing, all other pending motions in the instant case are DENIED as moot.