IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                )
Broadband iTV, Inc.,            )
                                )
              Plaintiff,        )
                                )
      v.                        ) Civ. No. 15-00131 ACK-RLP
                                )
Oceanic Time Warner Cable,      )
LLC, and Time Warner            )
Cable, Inc.,                    )
                                )
              Defendants.       )
_____)

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS OCEANIC TIME WARNER CABLE, LLC AND TIME WARNER CABLE, INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING INVALIDITY OF U.S. PATENT NO. 7,631,336

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants Oceanic Time Warner Cable, LLC and Time Warner Cable, Inc.'s Motion for Summary Judgment regarding Invalidity of U.S. Patent No. 7,631,336, ECF No. 474.

### FACTUAL AND PROCEDURAL HISTORY

On December 8, 2009, the United States Patent and Trademark Office ("USPTO") issued Patent No. 7,631,336 (the "'336 Patent"), entitled "Method for Converting, Navigating and Displaying Video Content Uploaded from the Internet to a Digital TV Video-on-Demand Platform." Am. Compl. ¶ 19, Ex. A, ECF Nos. 100, 100-1. The patent was issued in the name of Milton Diaz

Perez ("Diaz Perez")[1] and based on United States Patent Application No. 11/685,188 (the "'188 Application"), which was assigned to Broadband iTV, Inc. ("Plaintiff").  Am. Compl. ¶ 18, ECF No. 100.

The '336 Patent discloses and claims various features related to the delivery of video-on-demand ("VOD")[2] content to a VOD server.  Id. ¶ 21.  According to the patent itself, the invention is intended to facilitate "the provision of video content to viewers through digital TV infrastructure."  '336 Patent at Col. 1, ln. 17-18.[3]  Specifically, it relates to a method for "converting, navigating and displaying video content uploaded from the Internet on a digital TV video-on-demand platform."  Id. at Col. 1, ln. 19-21.  The patent includes eleven claims, out of which Claim 1 is independent and Claims 2-10 are dependent.  See id. at Col. 21-22.

---

[1]Diaz Perez serves as Chief Technology Officer for Broadband iTV, Inc.  See Declaration of Milton Diaz Perez ¶ 1, ECF No. 77-1.

[2]"Video-on-demand" is defined in the Amended Complaint as "delivery of [] video content predicated upon a specific request by the user or customer."  Am. Compl. ¶ 15, ECF No. 100.

[3]Copies of the '336 Patent appear throughout the record (for example, as Exhibit A to the Amended Complaint, at ECF No. 100-1).  For the sake of brevity, the Court omits the numerous applicable CM-ECF citations when referring to the patent text, excerpts of which it identifies using standard column and line references.

On April 9, 2014, Plaintiff filed a Complaint against Defendants Oceanic Time Warner Cable, LLC, Time Warner Cable, Inc., Time Warner Entertainment Company, LP[4] (collectively, "TWC"), and Hawaiian Telcom, Inc. ("HTI") (collectively, "Defendants"). Compl., ECF No. 1. The Complaint was amended on December 5, 2014. Am. Compl., ECF No. 100. The Amended Complaint accuses Defendants of infringing the '336 Patent by "making, using, offering for sale and selling the '336 patent's claimed method for converting, navigating and displaying video content in connection with their providing, selling and offering for sale digital television services." Id. ¶ 22. Defendants deny that they infringe the '336 Patent. Def. HTI's Answer and Affirmative Defenses to Plf. BBiTV's Am. Compl. ¶ 22, ECF No. 104; Def. TWC's Answer to Am. Compl. ¶ 22, ECF No. 106.

Pursuant to the parties' stipulation, the Court ordered the severance of the cases against TWC and HTI on April 16, 2015. The severed cases were consolidated "for all pre-trial purposes, including claim construction." Stipulation and Order at 2, ECF No. 164. Following an off-the-record technology tutorial, held on June 3, 2015, and a Markman hearing, held on June 4, 2015, the Court issued its Claim Construction Order on June 24, 2015. ECF No. 290.

---

[4]Time Warner Entertainment Company, LP has been dismissed from this action. ECF No. 94.

Following correspondence from the parties, the Court issued a Minute Order on August 4, 2015 outlining the number of permissible summary judgment motions. ECF No. 432. In the interests of judicial economy and pursuant to Federal Rules of Civil Procedure 1 and 16, the Court permitted each party to file one summary judgment motion regarding patent validity. In addition, each Defendant was permitted to file one summary judgment motion regarding patent infringement, and Plaintiff was permitted to file one summary judgment motion regarding patent infringement with respect to each Defendant. Id. at 2.

The instant motion relates to the validity of the '336 Patent. On August 10, 2015, TWC filed its Motion for Summary Judgment Regarding Invalidity of U.S. Patent No. 7,631,336, ECF No. 474 ("TWC's MSJ"), and a Concise Statement of Facts attached thereto, ECF No. 475 ("TWC's CSF"). TWC's motion challenges first that the '336 Patent is invalid as related to ineligible subject matter under 35 U.S.C. § 101, and second, that the '336 Patent is invalid as "anticipated" or "obvious" over prior art, pursuant to 35 U.S.C. §§ 102, 103.[5]

---

[5]On the same date, HTI filed its Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101, ECF No. 463 ("HTI's MSJ"), and a Concise Statement of Facts attached thereto, ECF No. 465 ("HTI's CSF"). HTI's motion challenges that the '336 Patent is invalid as related to ineligible subject matter under 35 U.S.C. § 101.

Because Plaintiff's cases against HTI (Civ. No. 14-00169 ACK-RLP) and TWC (Civ. No. 15-00131 ACK-RLP) are now severed,

On August 27, 2015, Plaintiff filed its Memorandum in Opposition to TWC's MSJ, ECF No. 561 ("Plf.'s Opp. to TWC's MSJ"), and a Concise Statement of Facts attached thereto, ECF No. 562 ("Plf.'s CSF – TWC's MSJ").[6]

On September 4, 2015, TWC filed its Reply Memorandum in Further Support of its MSJ, ECF No. 620 ("TWC's Reply"), and a Reply Concise Statement of Facts attached thereto, ECF No. 621 ("TWC's Reply CSF").   Hearings were held on TWC's MSJ and HTI's MSJ on September 17, 2015.[7]

---

the Court disposes of HTI's motion by a separate Order to be filed concurrently with the instant Order. For clarity, however, the Court notes that its analyses of HTI and TWC's challenges under 35 U.S.C. § 101 are substantially similar.   Additionally, CM-ECF citations in this Order correspond to the docket numbering in the Civ. No. 14-00169 ACK-RLP case, consistent with the numbering used in the parties' briefs.

[6]On August 27, 2015, Plaintiff also moved for leave to exceed the word and page limitations under the Local Rules for its Opposition to TWC's MSJ.   ECF No. 554.   The Court granted Plaintiff an additional 2,000 words for its Opposition.   Minute Order of August 31, 2015, ECF No. 575.   Pursuant to TWC's subsequent request for leave to exceed the word and page limitations and time for filing applicable to its Reply, ECF No. 591, the Court also granted TWC an additional 1,000 words for its Reply brief and an additional day to file.   Minute Order of September 2, 2015, ECF No. 593.

[7]The Court notes that the parties also filed a series of Daubert motions related to experts in this case on September 4, 2015.   One such motion filed by TWC seeks to exclude the testimony of Plaintiff's technical expert, David Wachob ("Wachob"), "on the issue of priority."   See TWC's Mot. to Exclude Expert Testimony of David Wachob on the Issue of Priority under Daubert and Fed. R. Evid. 702, ECF No. 617.

At the hearing of September 17, 2015, the Court asked TWC's counsel whether TWC sought to preclude consideration of Wachob's

**STANDARD**

I.    **Summary Judgment Standard**

A party is entitled to summary judgment on any claim or defense if it can be shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Maxwell v. Cnty. of San Diego, 697 F.3d 941, 947 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." United States v. Arango, 670 F.3d 988, 992 (9th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).  Conversely, "[w]here the record taken as a whole could not lead

---

testimony in conjunction with TWC's summary judgment motion. TWC's counsel stated that TWC was not challenging Wachob's expert qualifications and that the Court did not need to consider its Daubert motion as to Mr. Wachob before ruling its summary judgment motion.  Accordingly, the Court has deferred consideration of TWC's Daubert motion as to Mr. Wachob.
    The parties' remaining Daubert motions relate to damages and infringement experts and therefore do not need to be resolved prior to the instant Order.  See Minute Order of Sept. 10, 2015, ECF No. 664.

a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007).

The movant has the burden of persuading the court as to the absence of a genuine issue of material fact. Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010).  If the movant satisfies its burden, the nonmovant must present evidence of a "genuine issue for trial," Fed. R. Civ. P. 56(e), that is "significantly probative or more than merely colorable,"[8] LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted). When evaluating a motion for summary judgment, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott, 550 U.S. at 378.

## II. Standards Related to Patent Eligibility Under 35 U.S.C. § 101

Issues of patent-eligible subject matter under 35 U.S.C. § 101 ("Section 101") are questions of law.  CyberSource Corp. v. Retail Decisions, Inc., 654 F.3d 1366, 1369 (Fed. Cir. 2011).

---

[8]The Ninth Circuit has explained that "[l]egal memoranda and oral argument, in the summary-judgment context, are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." Flaherty v. Warehousemen, Garage and Service Station Emp. Local Union No. 334, 574 F.2d 484, 486 n.2 (9th Cir. 1978).  A "conclusory, self-serving affidavit" that lacks detailed facts and supporting evidence also does not create a genuine issue of material fact. F.T.C. v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010).

To the extent that the Court must resolve underlying questions of fact related to eligibility, they must be proven by clear and convincing evidence.  See, e.g., Affinity Labs. of Texas, LLC v. DirecTV, LLC, 2015 WL 3764356 * 16 (W.D. Tex. July 7, 2015); Kickstarter, Inc. v. Fan Funded, LLC, No. 11 Civ. 6909 (KPF), 2015 WL 3947178 * 5 n. 7 (S.D.N.Y. June 29, 2015).  Defendants, as the moving parties, bear the burden of establishing that the claims are patent-ineligible under Section 101.  See, e.g., Modern Telecom Sys. LLC v. Juno Online Servs., Inc., No. SA CV 14-0348-DOC (ANx), 2015 WL 1240182 * 7 (C.D. Cal. Mar. 17, 2015).

Courts disagree regarding whether a presumption of eligibility should apply in Section 101 cases.  A recent Federal Circuit concurrence stated that "no presumption of eligibility attends the section 101 inquiry."  Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 717 (Fed. Cir. 2014) (Mayer, J., concurring).  District courts have taken different approaches. Compare, e.g., Tranxition, Inc. v. Lenovo (U.S.) Inc., No. 3:12-cv-01065-HZ, 2015 WL 4203469 * 4 (D. Or. July 9, 2015) (declining to apply presumption of eligibility in Section 101 challenge) with Exergen Corp. v. Brooklands Inc., Civil Action No. 12-12243-DPW, 2015 WL 5096464 * 2 (D. Mass. Aug. 28, 2015) (applying presumption of eligibility in Section 101 challenge but noting that it "has less significance in the context of a largely legal

8

determination").  Given the most recent available guidance from the Federal Circuit, the Court will assume that such a presumption does not apply.[9]

### III. Standards Related to Patent Anticipation and Obviousness Under 35 U.S.C. §§ 102, 103

Determinations of "anticipation" and "obviousness" under 35 U.S.C. §§ 102, 103 ("Section 102," "Section 103") are reviewed differently from subject matter eligibility determinations under Section 101.  **In** Section 102 and Section 103 challenges, a patent is entitled to "a presumption of validity, and the burden of proof falls upon the party seeking to establish the invalidity of a patent claim."  See, e.g., Nystrom v. Trex Co., 374 F.3d 1105, 1117 (Fed. Cir. 2004) (quotation omitted).  However, where (as here) the prior art references offered by a defendant were not disclosed to the USPTO during the patent's prosecution, "the rationale underlying the presumption – that the PTO, in its expertise, has approved the claim" – is "much

---

[9]The Court notes that the mere fact of the patent's issuance also is not dispositive.  The Supreme Court's decision in Alice Corp. v. CLS Bank Int'l, 134 S. Ct. 2347, 2354 (2014) (interpreting Section 101) did not issue until June 19, 2014, long after the December 8, 2009 date of patent issuance in this case.  Compl. Ex. 1, ECF No. 1-1.

As the USPTO plainly did not have the benefit of Alice and its progeny when it issued the '336 Patent, there would seem to be little sense in presuming that the '336 Patent complies with present case law limitations on the scope of patent eligibility.

diminished." KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398, 418 (2007).[10]

A patent is "anticipated" under Section 102 where "every limitation is found either expressly or inherently in a single prior art reference." King Pharms., Inc. v. Eon Labs, Inc., 616 F.3d 1267, 1274 (Fed. Cir. 2010); see also, e.g., Schering Corp. v. Geneva Pharms., 339 F.3d 1373, 1377 (Fed. Cir. 2003). Anticipation is a question of fact, Schering, 339 F.3d at 1343, which must be proven by clear and convincing evidence, see, e.g., Sciele Pharma Inc. v. Lupin Ltd., 684 F.3d 1253, 1259-61 (Fed. Cir. 2012) (citing Microsoft, 131 S. Ct. at 2250).

In addition to the prior art references themselves, any expert testimony concerning anticipation "must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference." Schumer v. Lab. Comp. Sys., Inc., 308 F.3d 1304, 1315 (Fed. Cir. 2002).

---

[10]The Court notes that the strength of the presumption of validity is a separate issue from the clear and convincing standard of proof that applies to underlying factual issues (discussed below). Notwithstanding Plaintiff's suggestion to the contrary, the Court does not find that TWC's motion actually attempts to confuse these issues. See Plf.'s Opp. to TWC's MSJ at 17, ECF No. 561; Mem. in Support of TWC's MSJ at 26, ECF No. 474-1.

A patent is "obvious" under Section 103, meanwhile, where "the differences between the claimed invention and the prior art are such that the claimed invention *as a whole* would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art ["PHOSITA"]." 35 U.S.C. § 103 (emphasis added).[11] Determinations of obviousness under Section 103 are questions of law, based on underlying "factual determinations" regarding the "scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any objective indicia of non-obviousness." Randall Mfg. v. Rea, 733 F.3d 1355, 1362 (Fed. Cir. 2013) (citations omitted).

As with anticipation, TWC has the burden of proving invalidity by clear and convincing evidence.  See Quad Envt'l Techs. Corp. v. Union Sanitary Dist., 946 F.2d 870, 872 (Fed. Cir. 1991).  All factual inferences must be drawn in favor of Plaintiff.  When material facts are disputed, such that further "testimonial, documentary, and expert evidence [is] needed for resolution," summary adjudication is improper.  Id.

---

[11]As Plaintiff points out, however, TWC must show that a PHOSITA would find "an apparent reason to combine the known elements in the fashion claimed by the patent at issue." KSR Int'l, 550 U.S. at 418.  A patent comprising several elements is "not proven obvious merely by demonstrating that each of its elements was, independently, known in the art." Id. at 419.

11

**DISCUSSION**

TWC's MSJ argues first that the '336 Patent is invalid as directed to unpatentable subject matter, and second, that the claims of the '336 Patent are invalid as anticipated or obvious over prior art.   The Court analyzes these challenges sequentially below and finds (1) that the '336 Patent is invalid as directed to unpatentable subject matter under 35 U.S.C. § 101, and (2) Plaintiff has raised sufficient issues of material fact to preclude summary judgment that the '336 Patent is invalid as anticipated or obvious over prior art.

## I.   The '336 Patent Is Invalid as Directed to Unpatentable Subject Matter Under 35 U.S.C. § 101

TWC argues in the instant motion that the '336 Patent is invalid as directed to unpatentable subject matter under 35 U.S.C. § 101.   For the reasons set forth below, the Court agrees.   Accordingly, the '336 Patent is invalid and may not be enforced against TWC in this case.

Under 35 U.S.C. § 101, an invention is eligible for patenting if it fits into one of four subject-matter categories: processes, machines, manufactures, and compositions.   The Supreme Court has recognized three implicit exclusions from eligible subject matter: "laws of nature, natural phenomena, and abstract ideas." <u>Alice</u>, 134 S. Ct. at 2354 (citation omitted). The latter exclusion, "abstract ideas," is relevant here.

12

To determine whether an invention impermissibly claims a law of nature, natural phenomenon, or abstract idea, courts undertake a two-step test.  First, they must determine "whether the claims at issue are directed to one of those patent-ineligible concepts."  Id. at 2355 (citing Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1296-97 (2012)).[12]

If so, courts next "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  Id. (citation omitted).  This second step was described in Alice as a "search for an 'inventive concept' – i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'"  Id. (quoting Mayo, 132 S. Ct. at 1294, 1298).

The Supreme Court explained that the second step of the Alice test is designed to ensure that a patent reflects "more than a drafting effort designed to monopolize the abstract idea."  Id. at 2347 (citation and alteration omitted).

---

[12]Mayo applied to the category of "laws of nature," in the factual context of a method for calibrating drug dosing.  See 132 S. Ct. at 1290-91.  Alice applied to the category of "abstract ideas," in the factual context of computerized intermediated transactions.  See 134 S. Ct. at 2350.

Recognizing that all inventions depend, at some level, on abstract concepts, courts are nonetheless to invalidate patents that would "t[ie] up the future use of these building blocks of human ingenuity."  The Supreme Court has cautioned that doing otherwise would threaten the "pre-emption" of further innovation through the operation of patent monopolies on abstract ideas. Id. at 2354-55 (quotation omitted).[13]

In the wake of Alice, the Federal Circuit has observed that "any given analysis in a § 101 'abstract idea' case is hardly a clear guidepost for future cases arising under § 101 – each case stands on its own."  Versata Dev. Grp., Inc. v. SAP Am., Inc., 793 F.3d 1306, 1336 (Fed. Cir. 2015).  Nonetheless, certain general principles are clear.  For example, mathematical algorithms, even when executed on computers, are unpatentable abstract ideas.  See Gottschalk v. Benson, 409 U.S. 63, 64 (1972).  Certain fundamental economic and business practices are

_____

[13]The Court notes that this policy consideration regarding the preemption of inventive ideas is a "concern driving the judicial exception[]" to patentability.  "[C]ourts do not use preemption as a stand-alone test for eligibility," and "the absence of complete preemption does not guarantee that a claim is eligible."  U.S. Patent & Trademark Office, July 2015 Update: Subject Matter Eligibility * 8 (July 20, 2015) (citations omitted); see also, e.g., Personalized Media Commc'ns, LLC v. Amazon.com, Inc., Civil Action No. 13-1608-RGA, 2015 WL 4730906 * 6 (D. Del. Aug. 10, 2015) (preemption is an "important policy concern" but is not itself "the test for patent eligibility").  As in the instant Order, considerations of preemption are often subsumed within courts' discussions of whether inventions present sufficient "inventive concepts" under Alice.

14

also unpatentable abstract ideas, even when computers are used

to implement them.  See Bilski v. Kappos, 561 U.S. 593, 611

(2010) (risk-hedging strategy reduced to mathematical formula

was not patent eligible); Alice, 134 S. Ct. at 1356 (same for

"computer-implemented scheme" for exchanging financial

obligations to mitigate risk).

In general, even if claims "recite[] various computer

hardware elements," they are ineligible for patenting if they

are directed simply to the "performance of an abstract business

practice on the Internet or using a conventional computer."  DDR

Holdings, LLC v. Hotels.com, LP, 773 F.3d 1245, 1256 (Fed. Cir.

2014).  This is because "[t]he improved speed or efficiency

inherent with applying an abstract idea on a computer does not

provide an inventive concept."  Personalized Media Commc'ns,

2015 WL 4730906 at * 9 (citation omitted).  Conversely, a patent

directed to an "inventive concept for resolving [a] particular

Internet-centric problem" may not be unpatentable.  See DDR

Holdings, 773 F.3d at 1259.

### a.    The '336 Patent Claims an Abstract Idea

The Court begins by considering Step 1 of the Alice

analysis: identifying "the concept" of the '336 Patent and

whether it claims an abstract idea.  See, e.g., Ultramercial,

772 F.3d at 715 ("Although certain additional limitations, such

as consulting an activity log, add a degree of particularity,

15

the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content."); <u>Alice</u>, 134 S. Ct. at 2355. For the reasons discussed below, the Court finds that the '336 Patent claims an abstract idea.

As a preliminary matter, the Court summarizes the claims of the '336 Patent (of which Claims 1-4 and 7 are asserted against TWC and HTI).  Claim 1 is the only independent claim in the patent.  In summary, Claim 1 discloses:

1. A method for "automatically enabling the converting, navigating and displaying" of videos from a publisher on an "open online network" to a TV service provider for inclusion in its electronic program guide ("EPG"), by:

   a. Enabling the online uploading of videos to a Web-based content management server ("WBCMS") connected to a TV service provider's "VOD platform,"[14] along with metadata specifying certain hierarchical category information related to the videos;

   b. Converting the uploaded videos into standard TV digital format and storing "local instances" of the videos at video ID ("VID") addresses in the service provider's VOD platform;

   c. Listing the titles of the videos in the service provider's EPG using the same hierarchical category information that was uploaded as metadata;

   d. Giving TV subscribers access to the service provider's EPG to choose from among the "hierarchically-arranged titles of video content;"

---

[14]The Court construed "VOD platform" at claim construction as "hardware and software used to deliver video content at the request of the subscriber."  Claim Constr. Order at 76, ECF No. 290.

> e. Enabling a chosen video to be retrieved and sent to
>    a subscriber's set-top box ("STB") after the
>    subscriber sends his video request to the VOD
>    platform using his remote control.

See '336 Patent at Col. 21, ln. 15-Col. 22, ln. 7.

Claims 2-4 and 7 are much shorter: Claims 2 and 3 disclose

uploading videos from a user's computer and using a uniform

resource locator ("URL"), Claim 4 discloses using metadata

expressed as a "string of category and subcategory terms and the

title delimited by standard delimiters," and Claim 7 discloses

using an EPG in which users can store "bookmarks" for TV

programs.  See id. at Col. 22, ln. 8-24, 37-41.[15]

Following Alice, the Federal Circuit has examined Section

101 challenges to several patents that, like the '336 Patent,

use computer and Internet technology to transmit and store

various media.  Although each Section 101 case "stands on its

own," Versata Dev. Grp., 793 F.3d at 1336, a review of similar

cases is instructive.  For example, the Federal Circuit recently

explained that "using categories to organize, store, and

transmit information is well-established . . . the idea of

collecting information in classified form, then separating and

transmitting that information according to its classification,

is an abstract idea that is not patent-eligible."  Cyberfone

---

[15]The Court notes that the summary above is provided for the
reader's convenience and does not purport to capture all of the
precise terms used in the patent itself, which may be reviewed
at ECF No. 100-1.

Sys., LLC v. CNN Interactive Grp., 558 Fed. App'x 988, 991-92 (Fed. Cir. 2014).

Additionally, the broad concept of using organizational and product group hierarchies to determine prices for products and customers is an abstract idea, even where it is implemented using computers. Versata, 793 F.3d at 1333-34 (noting that patents directed to "collecting, recognizing, and storing data" claim abstract ideas). Similarly, a patent directed to collecting data from documents, recognizing information within that data, and storing it in memory claims an abstract idea, despite the use of scanning and processing technology. Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

District court decisions in this area are also persuasive. For example, a patent directed to the "idea of compiling, organizing, and transmitting information, using identification codes as shorthand for that information" was found to be directed to an abstract idea. OpenTV, Inc. v. Apple, Inc., 2015 WL 1535328 * 3 (N.D. Cal. Apr. 5, 2015). So too was a patent found to claim an abstract idea where it was directed to "converting and forwarding messages, so that the messages are sent in a format and layout in which they can be received by a recipient." TriPlay, Inc. v. WhatsApp Inc., 2015 WL 1927696 * 13 (D. Del. Apr. 28, 2015). Additionally, patents premised on

18

using combinations of categorical information to organize videos and creating user "bookmarks" saved through a "media-on-demand server" were found to claim abstract ideas.  Netflix, Inc. v. Rovi Corp., Case No. 11-cv-6591 PJH, 2015 WL 4345069 * 9, 18 (N.D. Cal. July 15, 2015).

TWC urges that the claims, "using generic computer elements," implement "the idea of using the same hierarchical ordering based on metadata to facilitate the display and locating of video content."  Mem. in Support of TWC's MSJ at 9, ECF No. 474-1.

Plaintiff's brief offers no suggestion of what the patent *does* claim, if not an abstract idea.[16]  Plaintiff briefly complains that Defendants' descriptions of the patent claims are "oversimplifications," but it does not delineate what, if anything, Defendants leave out.  See Plf.'s Opp. to TWC's MSJ at 5-6, ECF No. 561.  Instead, most of Plaintiff's briefing simply concerns the second step of the Alice test, arguing that the Court need not decide whether the patent is directed to an abstract idea (under Alice step one) if Defendants fail to meet

---

[16]The Court asked Plaintiff's counsel at the hearing of September 17, 2015 what the '336 Patent *does* claim, if not an abstract idea.  He eventually indicated that Plaintiff's position is that the patent does not claim an abstract idea and is instead a "technical solution," as described in the patent specification.

their burden to show a lack of "inventive concept" (under <u>Alice</u>

step two).  <u>See</u> <u>id.</u> at 6.

Notwithstanding Plaintiff's limited response, the Court

undertakes to evaluate whether the '336 Patent appears to claim

an abstract idea.  The Court previously identified the following

as the "novel" underlying idea of the invention: "creating a

method for uploading videos via Internet with accompanying

metadata, which allows the videos to be automatically listed in

a cable company's EPG for viewer selection."  Claim Constr.

Order at 32-33, ECF No. 290.  This is essentially the abstract

idea identified by TWC: "using the same hierarchical ordering

based on metadata to facilitate the display and locating of

video content."

The same understanding of the patent's basic concept is

consistent with the Patent Trial and Appeal Board ("PTAB")

Decision Denying Covered Business Method Review of the '336

Patent, which noted:

> [T]he problem in the prior art described
> and addressed by the '336 patent is the
> alleged lack of 'capability for Internet uploading
> and automatic listing in any VOD EPG' . . .
> [t]he problem is addressed through '*listing
> the title of the video content in the [EPG]
> using the same categories as those specified
> in the metadata uploaded along with the video
> content.*

Decision Denying Covered Business Method Patent Review * 12 CBM

2014-00189 (Apr. 1, 2015) (alterations omitted and emphasis

added) (citing '336 Patent at Col. 3, ln. 62-64 and Preliminary Response at 16).[17]

The PTAB concluded that the '336 Patent is a "covered business method patent" and not a "technological invention," as it is directed toward "primarily a content organization problem, not a technical problem."  The PTAB was thus "not persuaded that [it] is a technical solution to a technical problem."  Id.[18]

The Court finds that the '336 Patent, consistent with the foregoing descriptions, claims an abstract idea.  As TWC argues, the patent claims the concept of "using the same hierarchical ordering based on metadata to facilitate the display and locating of video content."  To do so, the patent exploits matches between hierarchical identifiers – uploaded at one end of the process as metadata, and read at the other end to display listed videos – in order to facilitate the automatic EPG listing

---

[17]The same understanding of the invention was also reflected in a letter from the patentee to the USPTO, wherein he indicated that "[a]pplicant's technical solution was for the uploaded content to be *accompanied by metadata that specified each segment's viewing order in the hierarchical ordering, then using the display orderings specified in metadata to automatically define the order of viewing the linked displays* as an immersive, drill-down viewing experience."  Response to Office Action at 4-5, ECF No. 175-9 (emphasis added).

[18]While the Court recognizes that the PTAB was analyzing the '336 Patent's qualification as a "technological invention" for purposes of deciding whether to undertake CBM review – a different legal task than the one presented – the Court nonetheless finds the foregoing passage relevant to its analysis of whether the '336 Patent claims an "abstract idea."

of videos sent to cable companies by outside publishers.  This essentially translates hierarchical ordering information that allows videos to be efficiently uploaded, stored, and displayed.

OpenTV is on point as persuasive authority.  There, the court found that a patent claimed an "abstract idea of compiling, organizing, and transmitting information, using identification codes as shorthand for that information."  2015 WL 1535328 at * 3.  One could apply almost an identical description to the aforesaid abstract idea behind the '336 Patent.  Also similar is In re TLI Commc'ns LLC Patent Litig., MDL No. 1:14md2534, 2015 WL 627858 (E.D. Va. Feb. 6, 2015), wherein a patent for "recording, communicating and administering digital images" through a server claimed simply an "abstract idea of taking, organizing, classifying, and storing photographs."

The OpenTV court noted that the problem of "how to transmit, receive, store, and organize [] information deriving from multiple sources is not a creature of the Internet age: solutions to this problem date back to the invention of smoke signals."  Id. at * 4; see also, e.g., Content Extraction, 776 F.3d at 1347 ("The concept of data collection, recognition, and storage is undisputedly well-known."); Cyberfone Sys., 558 Fed. App'x at 992 (the "well-known concept" of "using categories to organize, store, and transmit information" is not patent-

eligible); Market Track, LLC v. Efficient Collaborative Retail Marketing, LLC, No. 14 C 4957, 2015 WL 3637740 * 5 (N.D. Ill. June 12, 2015) (patent was directed toward abstract idea of "identifying, organizing, and presenting stored information," notwithstanding "degree of particularity" conferred by requirements for database queries, stand-alone file outputs with associated information, and file deliveries).  The same principles favor a finding that the '336 Patent claims an abstract idea here.

Courts have also considered in the "abstract idea" analysis (even prior to Alice) whether the steps of a patent "can be performed in the human mind, or by a human using a pen and paper."  CyberSource, 654 F.3d at 1372.  Such a finding supports the conclusion that a patent claims "the types of methods that embody 'the basic tools of scientific and technological work' that are free to all men and reserved exclusively to none,' and therefore comprise a non-patent-eligible abstract idea."  Id.

As in OpenTV, the Court finds that this inquiry further supports a finding that the '336 Patent claims an abstract idea. Even though the '336 Patent anticipates that its steps will be performed through computer operation, it describes a process that a person could perform "[u]sing a pen, paper, and her own brain."  OpenTV, 2015 WL 1535328 * 4; see also, e.g., Tranxition, 2015 WL 4203469 * 13 (finding that a human could

perform steps of a patented method to transfer computer settings by locating the settings she wanted on the first computer, "extracting" those settings, locating where similar settings are stored on a new computer, and applying the new settings).

It is possible, for example, that a person could write down a list of categorical identifiers for a video and send the video on tape, along with the list, to a cable company, whose employees could then manually upload the video to the company's VOD platforms and use the same list of categorical identifiers to designate where the video will be displayed in subscribers' EPGs.  This was, in essence, the former state of affairs that the parties described to the Court at its Technology Tutorial of June 3, 2015.  See also Transcript of Proceedings of June 4, 2015 ("Tr.") at 13:9-15:17, 22:6-15, ECF No. 258.[19]

---

[19] Plaintiff's claim construction brief similarly stated: "Historically, in order to upload a program to a VOD system, a content producer was required to copy each program to a video tape, which was physically delivered to the TV service provider . . . the video tape was accompanied by a document or file containing information associated with the program, such as the title of the program, the name of the series . . . the delivery of multiple programs required the use of multiple tapes and accompanying documents or files which [were] manually processed by skilled staff for entry into the VOD system . . . [the '336 Patent offered] a more streamlined, faster, and cheaper process that automatically added the content to the VOD database and menu scheme and did not require the use of any physical tapes."
Plf.'s Claim Constr. Br. at 3-4, ECF No. 174.

For all of the foregoing reasons, the Court finds that the '336 Patent claims an abstract idea.

### b.   The '336 Patent Lacks a Sufficient "Inventive Concept" to Be Patent-Eligible

Having concluded that the '336 Patent claims an abstract idea, the Court considers whether it nonetheless adds a sufficient "inventive concept" to qualify as eligible subject matter under step two of the Alice test.  134 S. Ct. at 2355. The elements of the claims, either individually or in combination, must "ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself."  If not, the patent must be invalidated.  Id. (quotations omitted).

"Conventional or obvious" implementing activity does not "transform an unpatentable principle into a patentable process." Bilski, 561 U.S. at 610; see also, e.g., OpenTV, 2015 WL 1535328 at * 6 (where an invention "does not go beyond the 'routine or conventional use' of existing electronic components . . . [t]he fact that a company may be the first to successfully apply an abstract idea within a new technological context does not transform the abstract idea into something tangible and patentable") (citation omitted).[20]  It also is not enough for a

---

[20]In the same vein, the "novelty" of an idea is not enough in itself to confer patentability, where the novelty does not exceed the "inventive concept" limitations discussed below.

patent to recite the use of computer hardware or software that
would "limit the use of [the idea] to a particular technological
environment," such as VOD.  Accenture Global Servs., GmbH v.
Guidewire Software, Inc., 728 F.3d 1336 (Fed. Cir. 2013)
(citations omitted).  "Given the ubiquity of computers . . .
wholly generic computer implementation is not generally the sort
of additional feature that provides any practical assurance that
the process is more than a drafting effort designed to
monopolize the abstract idea itself."  Alice, 134 S. Ct. at 2358
(alterations and citations omitted).

　　　　Instead, to contain an inventive concept, computer system
technology must do more than perform "well-understood, routine,
and conventional activities previously known to the industry."
Id. at 2359 (alteration omitted); see also Content Extraction,
776 F.3d at 1348.  District courts examining inventions
implemented through the use of computers and Internet

---

See, e.g., Diamond v. Diehr, 450 U.S. 175, 188-89 (1981) ("The
'novelty' of any element or steps in a process, or even of the
process itself, is of no relevance in determining whether the
subject matter of a claim falls within the § 101 categories of
possibly patentable subject matter."); Personalized Media
Commc'ns, 2015 WL 4730906 at * 3, 6 (D. Del. Aug. 10, 2015)
(finding a lack of sufficient inventive concept and observing
that the fact "that the method was a new means of transmitting
information is not relevant," as "[p]racticing an abstract idea
in a novel way is still practicing an abstract idea").
　　　　Plaintiff cannot, therefore, claim an "inventive concept"
that qualifies for Section 101 subject matter eligibility simply
by parroting the Court's identification of the "novelty" of the
invention in its Claim Construction Order.

technology, post-Alice, have found it useful to compare the Federal Circuit decisions of Ultramercial and DDR Holdings in this regard.  See, e.g., Netflix, 2015 WL 4345069 at * 5.  The Court does the same here.

In the first case, Ultramercial, the Federal Circuit found invalid under Section 101 a patent for a method that allowed a user to view copyrighted media (such as a television show) online, free of charge, in exchange for viewing an advertisement online.  772 F.3d 709.  As here, the patent purported to recite a detailed series of steps: (1) receiving the copyrighted media from a content provider, (2) selecting an ad, (3) offering the media on the Internet, (4) restricting public access to the media, (5) offering the media to the customer in exchange for watching the selected ad, (6) receiving a request to view the ad from a user, (7) facilitating display of the ad, (8) allowing the consumer to access the media, (9) allowing the consumer access to the media if the ad is interactive, (10) updating the activity log, and (11) receiving payment from the ad sponsor. Id. at 714-15.

The Federal Circuit first concluded that the patent was drawn to the abstract idea of "showing an advertisement before delivering free content."  Id. at 715.  Second, in its search for an "inventive concept," the court concluded that some of the patent's steps were "not previously employed in this art."

27

Nonetheless, they were "conventional steps, specified at a high level of generality, which is insufficient to supply an inventive concept."  The patent was thus invalid.  Id. at 716.

In contrast, in DDR Holdings, the Federal Circuit upheld the patent eligibility of a software patent that generated a "hybrid website" when a host website visitor clicked an advertisement that would normally transport him to the advertiser's website.  773 F.3d 1245.[21]  The hybrid website retained the "look and feel" of the host website but contained relevant product information from the advertiser's website.  It even allowed for purchase over the hybrid website, without forcing the user to actually leave the host website.  This prevented the host website from losing its audience.  Id. at 1248-49.

Without clearly addressing whether the patent addressed an abstract idea, the Federal Circuit concluded that the DDR Holdings patent included an "inventive concept" under Alice. Instead of "merely recit[ing] the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet," the patent's solution was "necessarily rooted in computer technology in order

---

[21]The Court notes that DDR Holdings appears to be the only post-Alice case in which the Federal Circuit rejected a patent eligibility challenge under Section 101.  In thirteen out of fourteen cases presenting such challenges since Alice, the Federal Circuit has found the patent at issue to be invalid.

to overcome a problem specifically arising in the realm of computer networks." Id. at 1257.

Moreover, and in contrast to Ultramercial, the court found that the claims "specify how interactions with the Internet are manipulated to yield a desired result – a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink.  Instead of the computer network operating in its normal, expected manner by sending the website visitor to the third-party website . . . the claimed system generates and directs the visitor to the [] hybrid web page."  Id. at 1258-59.

The DDR Holdings court also emphasized that the invention did "not attempt to preempt every application of the idea" of software used to create hybrid websites, covering only one "specific way to automate the creation of a composite web page." This eliminated the preemption of ideas concern that was presented in Alice.  Id. at 1259.

Plaintiff here argues that the "inventive concept" of the '336 Patent is provided by steps (a) and (c) of Claim 1.  This is so, Plaintiff argues, because "step (a) of claim 1 provides specific details on how the purported abstract idea can be implemented in practice," and "step (c) further clarifies that the EPG of the VOD platform uses 'the same hierarchically-

arranged categories and subcategories as used in the uploaded metadata.'"  Plf.'s Opp. to TWC's MSJ at 7, ECF No. 561.

The Court notes that the text of steps (a) and (c) of the '336 Patent describe essentially the steps of (1) uploading video content with metadata prescribing hierarchical categories, and (2) listing video titles in cable companies' EPGs based on the same hierarchical categories.  The full text of these steps appears in the '336 Patent at Col. 21, ln. 27-34, 42-48, ECF No. 100-1.

Plaintiff argues that these steps of the claims provide "specific details of implementation, rather than broad, generic recitation."  Supposedly, this makes the claims "eligible for patenting."  Plf.'s Opp. to TWC's MSJ at 8, ECF No. 561.

First, TWC argues – and the Court agrees – that the '336 Patent claims do not tend to provide the level of "specific details of implementation" that Plaintiff suggests.  This is true even in steps (a) and (c).  Rather, the claims consistently refer to the patent's computerized steps at "a high level of generality, which is insufficient to supply an inventive concept."  Ultramercial, 772 F.3d at 716.

For example, the patent describes "enabling [] uploading" of videos, (Claim 1(a)), converting [] content" (Claim 1(b)), "listing [] title[s]" (Claim 1(c)), "providing  .  .  . access to the [EPG" (Claim 1(d)), and "enabling retrieval of the selected

video content" (Claim 1(e)).  These are broad terms that would seem to be "well-understood, routine, conventional activities previously known to the industry," particularly given that the claims provide them no more explicit definition.  _Alice_, 134 S. Ct. at 2358 (alterations and citations omitted); _see also, e.g.,_ _OpenTV_, 2015 WL 1535328 at * 3 (finding that claims using terms such as "broadcasting," "storing," "assembling," "associating," "receiving," and "transmitting," related to identification codes, were drawn to abstract ideas that did not "go beyond the 'routine or conventional use' of existing electronic components"); _Tranxition_, 2015 WL 4203469 at * 7 (finding "nothing at all 'specific'" about patent language describing identifying where configuration settings are stored, building a list of settings to transfer, fetching the settings from a computer, and manipulating the settings to match the format on another computer).

Moreover, the fact that a patent provides specific details of implementation is not enough to secure patent eligibility if those "details" continue to encompass merely "generic computer implementation" and "routine activities."  _Alice_, 134 S. Ct. at 2358-59.  Plaintiff cites _DDR Holdings_ in support of its position, but a key consideration in that case was that the patent claims "specif[ied] how interactions with the Internet are manipulated to yield a desired result" that was different

31

from "the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink."  773 F.3d at 1258.

Here, Plaintiff points to no element of the claims that call for computer or Internet technology to behave in an unconventional manner.  Indeed, the invention relies on the Internet and computer technology to perform in a normal manner, "using categories to organize, store, and transmit information." Cyberfone Sys., 558 Fed. App'x at 992.

Moreover, DDR Holdings arose in a factual context where the steps performed to build a hybrid website could *only* be performed by a computer.  Here, in contrast, the steps of the patent could be performed (more slowly) by hand.  Plaintiff cites cases including Execware, LLC v. BJ's Wholesale Club, Inc., 2105 U.S. Dist. LEXIS 92127, *53-54 (D. Del. July 15, 2015), wherein a patent was found eligible under Section 101 where it was "not directed simply to using a computer to perform the abstract idea more quickly than could be done without a computer."  That seems, however, to have been the point of the '336 Patent.  As the parties explained to the Court at the technology tutorial in this case, and as discussed above, the '336 Patent seeks to automate, using computers, a process that formerly was accomplished manually.

Perhaps anticipating this concern, Plaintiff argues that the '336 Patent nonetheless qualifies for patent eligibility

under Section 101 because Claim 1 does "not merely recite

generic computer terms like memory, controller, display, etc.

but instead provide[s] detailed specific components."  Plf.'s

Opp. to TWC's MSJ at 10, ECF No. 561.[22]  The specific components

highlighted by Plaintiff in its brief are the set-top box

("STB"), VOD platform, and Web-based Content Management Server

("WBCMS").  See id. at 10.

It appears that Plaintiff's argument may be premised on the

pre-Alice "machine or transformation" test used in Bilski, 561

U.S. at 611.  In that case, the Federal Circuit had explained

---

[22]Courts need not analyze separately every claim in a patent
where one is "representative," because "all the claims are
'substantially similar and linked to the same abstract idea.'"
Content Extraction, 776 F.3d at 1348.  Such is the case here,
where Claim 1, the only independent claim of the patent, is
representative of the abstract idea presented in the entire
patent and links all of the dependent claims.  Plaintiff does
not appear to suggest otherwise and does not argue that separate
inventive concepts are presented in any of the dependent claims.
      For the sake of clarity, however, the Court finds that all
of the asserted claims (Claims 1-4 and 7) are not patent
eligible under Section 101, for the reasons set forth herein as
to Claim 1.  The remaining claims simply recite the use of
additional conventional computing technology (user computers,
URLs, "standard delimiters" for metadata, and server-stored
"bookmarks") without prescribing any atypical, unique, or even
particularly specific function for those components.
      The Court observes in particular that the '336 Patent
claims do not identify how the foregoing components work, on a
technical level; instead, they simply recite that these
components may be used according to the method outlined in Claim
1.  See, e.g., Tranxition, 2015 WL 4203469 at *16 (finding that
dependent claims, including one involving "browser bookmarks,"
reflected "little more than an exercise in creatively re-naming
conventional computer functions" and failed for the same reasons
as the independent claims).

that a patented process is patent-eligible under Section 101 if
it "(1) is tied to a particular machine or apparatus, or (2) it
transforms an article into a different state or thing."  The
court described that inquiry at the time as "the sole test
governing § 101 analyses."  In re Bilski, 545 F.3d 943, 954
(Fed. Cir. 2008).  On appeal, the Supreme Court clarified that
the machine-or-transformation test is not the sole question
governing Section 101 analyses, but can be considered an
"important and useful clue" regarding patentability.  Bilski,
561 U.S. at 603.  The test was subsequently used by the Federal
Circuit, pre-Alice, to uphold a patent related to a GPS
receiver.  SiRF Tech., Inc. v. Int'l Trade Comm'n, 601 F.3d
1319, 1332-33 (Fed. Cir. 2010).

If Plaintiff's argument is *not* intended to invoke the
Bilski machine-or-transformation test – a point never made clear
in Plaintiff's Opposition – its remaining value would appear to
be simply distinguishing Alice's mandate that "generic" computer
activity does not provide a sufficient inventive concept for
patent eligibility.  134 S. Ct. at 2358.[23]

Whether it is directed to distinguishing Alice or meeting
the machine-or-transformation test, the Court is not persuaded

---

[23]Plaintiff's counsel indicated at the Court's hearing of
September 17, 2015 that its brief had not intended to invoke the
machine-or-transformation test.  However, he recognized that the
test is "important" and asserted that Plaintiff believes that it
supports Plaintiff's position.

by Plaintiff's argument.  In general, a machine "must do more
than simply play a significant part in permitting the claimed
method to be performed in order to supply the required inventive
concept."  Netflix, 2015 WL 4345069 at * 55 (quotation omitted);
see also Accenture, 728 F.3d at 1345 ("[G]eneralized software
components arranged to implement an abstract concept on a
computer . . . do not provide sufficient additional features
[for patentability].").

"If identifying a particular *function* of a machine were
enough to establish patentability under the 'machine or
transformation' test, then any patentee could evade invalidity
by using specific-sounding language to describe a general
purpose computer."  Netflix, 2015 WL 4345069 at * 55 (finding
that a "media-on-demand system" and "media-on-demand server"
were nothing more than conventional server and server-client
equipment, and therefore properly considered to be generic
computer parts implementing an abstract idea).  For example, in
Alice, claims were held invalid where "what petitioner
characterizes as specific hardware – a 'data processing system'
with a 'communications controller and data storage unit,' for
example – is purely functional and generic."  134 S. Ct. at
2360.

As TWC argues, it seems that Plaintiff's arguments here
amount to little more than characterizing conventional computer

components (and the claims' combination of steps for using them) according to their "specific-sounding" functions.  Plaintiff's short discussions in its brief of the STB, VOD platform, and WBCMS offer only the following evidence:

1. Branko Gerovac ("Gerovac"), an expert witness for TWC, described the STB in his deposition as "includ[ing] a general purpose computer as a component of its hardware," and as a "computer that includes other components that allow it to be used in the context of a cable system."

2. According to Gerovac, a VOD platform "would" or "could" be "comprised of general purpose computers of the kind that an individual would use," and "[i]n terms of software," a VOD platform "would be configured for a special purpose [of] providing Video on Demand services."

3. The WBCMS, according to Plaintiff, has a "specific and unique network connection."  This is because, according to the patent, it is "connected to the VOD platform of the discrete digital TV service provider network" as well as the open, online network by which it receives videos.

Plf.'s Opp. to TWC's MSJ at 10-11, ECF No. 561 (citing Jones Decl. Ex. 10 at Tr. 251:13-252:25, ECF No. 562-11; '336 Patent at Col. 21, ln. 27-34).

The Court pauses to note that when he was asked at the Court's September 17, 2015 hearing whether the '336 Patent relies on any technological components that were not already known in the art, Plaintiff's counsel identified only the WBCMS.

Nonetheless, even considering all of Plaintiff's evidence regarding the STB, VOD platform, and WBCMS, such evidence does not raise genuine issues of material fact sufficient to defeat summary judgment.  First, Gerovac merely confirms that the STB

36

and VOD platform include general purpose computer components. That does not, in itself, suggest or explain that STBs and VOD platforms should be considered something other than conventional computing technology for purposes of the Court's analysis.

Second, it is unhelpful that Gerovac testifies that the VOD platform's software is configured for a "special purpose [of] providing Video on Demand services."  That software has a particular task does not mean it is not conventional computing technology.  See Intellectual Ventures I LLC v. Capital One Bank (USA), 792 F.3d 1363, 1370 (Fed. Cir. 2015) (upholding invalidity where computer components relied on software "tasked with providing web pages to and communicating with the user's computer").

Third, with respect to the WBCMS, Plaintiff's arguments are similar to those rejected by the courts in Intellectual Ventures, Netflix, and In re TLI Communications.  "Specific-sounding" language regarding conventional computer components' functions, such as their ability to connect to VOD platforms and online networks, does not confer patent eligibility.  See In re TLI Commc'ns, 2015 WL 627858 at * 10 (cautioning that Section 101 analyses should "not be obscured by [] convoluted 'patent-ese'").

In Intellectual Ventures, the Federal Circuit rejected plaintiff's argument that an inventive concept was provided by

the use of an "interactive interface that manages web site content."  Despite its unique nomenclature, the interface was simply "a generic web server with attendant software."  792 F.3d at 1370.  Similarly, in Netflix, the court found "no basis on which to find that the recited 'media-on-demand system' is anything other than a generic server/client system, nor that the 'media-on-demand server' is anything other than a generic server."  2015 WL 4345069 * 19.  Notably, the recited server claimed "communications link[s]" to multiple sets of "client devices," allowing for the "ability to receive delivered media (such as a movie) across a network."  Id.  This is similar to the functionality highlighted by Plaintiff.  Moreover, as TWC points out in its Reply, this connectivity is the normal and anticipated use of a conventional server.

In re TLI Communications also involved a server used to record and administer digital media, which the court found amounted to nothing more than conventional computing technology.  2015 WL 627858 at * 12-13.  Similarly to the WBCMS here, the server in that case received digital images and classification information inputted by users, extracted the data and classification information, and stored the digital images according to the classification information.  The court found that the server's functions of transmitting, extracting, and

storing information and media were those of a "generic computer performing conventional functions." Id. at 14.

So too here. The WBCMS in the '336 Patent receives videos uploaded with metadata for categorization over the Internet, converts the videos to standard TV digital format to be stored as "local instances" at VID addresses in cable providers' video content databases, and is otherwise a connected part of the providers' VOD platforms in facilitating the display of programs selected by subscribers. See '336 Patent at Col. 21, ln. 27-Col. 22, ln. 7. As the Federal Circuit has made clear, however, "data collection, recognition, and storage" are "undisputedly well-known" functions for servers. They do not impart any inventive concept. Content Extraction, 776 F.3d at 1347; see also, e.g., MicroStrategy Inc. v. Apttus Corp., Case No. 3:15-cv-21-JAG, 2015 WL 4425828 * 6 (E.D. Va. July 17, 2015) (server's ability to carry out automatic archiving based on classification information was simply routine and conventional computer function).

The irony is that Plaintiff advocated for and obtained the broad claim constructions that now inform the Court's understanding of the patent. For example, Defendants advocated a claim construction for "WBCMS" that would have imported a substantial number of more specialized features from Figure 2B in the specification. See Claim Constr. Order at 61, ECF No.

39

290.  Plaintiff, in contrast, urged a construction of "a server accessible over an online network for managing content."  Id.

The Court, relying on cases such as Liebel-Flarsheim, 358 F.3d 898 (Fed. Cir. 2004) and Winbond Elecs. Corp. v. Int'l Trade Comm'n, 4 Fed. App'x 832 (Fed. Cir. 2001), adopted a construction that was similar to Plaintiff's: "a server accessible over the Internet, including the Web, for managing content."  Id. at 68.  A similar understanding of the patent is reflected in the deposition testimony of the inventor, who could not recall the brand or name of the WBCMS and agreed that he had simply bought it "off the market."  Deposition of Milton Diaz Perez at Tr. 776:19-777:6, ECF No. 606-4.  This construction of the WBCMS does not appear much different from the descriptions of the servers in the cases cited above.  Plaintiff cannot read the claims one way at claim construction to boost the chances of finding infringement, and then another way to avoid a finding of invalidity.  See, e.g., Nassau Precision Casting Co. v. Acushnet Co., 556 Fed. App'x 933, 938 (Fed. Cir. 2014) (citation omitted).

Beyond the foregoing, the Court is unable to independently discern some other "inventive concept" in the claims under Alice.  As discussed above, it is not sufficiently "inventive" to use conventional computers and the Internet to automate, as a combined set of steps, the implementation of an abstract idea

40

that can be completed manually.  This is so even where a

particular inventor may be the first to do so.[24]  See, e.g.,

Content Extraction, 776 F.3d at 1347 (invalidating method for

automating data recognition and storage); Accenture, 728 F.3d at

(invalidating method for automating the generation of tasks

related to insurance claim processing using particular

software); East Coast Sheet Metal Fabricating Corp. v. Autodesk,

Inc., Civil No. 12-cv-517-LM, 2015 WL 226084 * 10 (D.N.H. Jan.

15, 2015) ("[T]he advantage of the claimed invention is

increased speed resulting from the normal operation of a generic

computer . . . [however], one does not solve a problem in any

given field simply by using existing technology to speed up a

process once done by hand.  That is not an inventive concept; it

is just what generic computers normally do.").

Finally, the Court notes that Plaintiff repeatedly claims

that Alice's concern with the preemption of innovative ideas is

not presented here.  Plaintiff argues that this is because the

claims only "cover instances where the metadata: (i) is uploaded

with the video content; (ii) over an open online network; (iii)

uses the same categories and subcategories as the EPG in a VOD

---

[24]For this reason, the Court is not persuaded by Plaintiff's
argument at the hearing of September 17, 2015, citing Mayo, that
a patent is viable under Section 101 simply as a "new
combination" of steps using well-known components.

platform of; (iv) a closed, discrete digital TV service provider network."  Plf.'s Opp. to TWC's MSJ at 12, ECF No. 561.

However, Plaintiff never identifies – much less provides useful evidence of – any way that publishers could transmit videos to cable companies for automated inclusion in their hierarchical VOD listings without infringing the '336 Patent. "Legal memoranda and oral argument, in the summary-judgment context, are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment."  Flaherty, 574 F.2d at 486 n.2.

This differs from a case like DDR Holdings, wherein the patent at issue covered only one "specific way to automate the creation of a composite web page" and left other methods open for innovation.  773 F.3d at 1259.  No other ways appear to be left open here to accomplish the '336 Patent's result.  At the very least, Plaintiff's briefing did not identify one for the Court.  This is contrary to Alice's prohibition on the monopolization of abstract ideas.  134 S. Ct. at 2347.

The Court pauses to note further that it does not agree with Plaintiff's counsel's suggestion at the hearing of September 17, 2015 that Plaintiff did not brief the issue of preemption.  This is incorrect.  As noted above, Plaintiff's Opposition spends three pages discussing preemption.  See Plf.'s Opp. to TWC's MSJ at 11–13, ECF No. 561.  Plaintiff's counsel

42

also referred to certain opinions of Defendants' infringement
experts regarding potential non-infringing uses but admitted
that such evidence was not submitted to the Court in the instant
briefing.[25]

Regardless, none of the potential uses described by
Plaintiff's counsel at the hearing involved the field of
Internet implementation relevant to the '336 Patent; rather,
those uses relied on satellite, facsimile, and video tape
transmission to cable providers.  District courts have evaluated
preemption considerations "in light of the field to which the
patent is directed."  Amdocs (Israel) Ltd. v. Openet Telecom,
Inc., 56 F. Supp. 3d 813, 818 (E.D. Va. Oct. 24, 2014); see
also, e.g., Tranxition, 2015 WL 4203469 at *18.

Here, by the patent's own terms, the relevant field is
"upload[ing] from the Internet."  See '336 Patent at Col. 1, ln.
20.  So understood, the operative field may be completely
preempted by Plaintiff's patent.  See Personalized Media
Commc'ns, 2015 WL 4730906 at * 4, 8 ("Plaintiff claims that the
patent does not preempt all methods of updating operating
instructions, but it seems to me that it does preempt all

_____

[25]Plaintiff's counsel also sent a letter to the Court dated
September 22, 2015, offering to provide copies of the foregoing
infringement expert opinions.  ECF No. 757.  Defendants sent
letters of response on September 24-25, 2015, and Plaintiff sent
a reply letter on September 25, 2015.  ECF Nos. 763, 770, 771.
The Court declined Plaintiff's counsel's offer for reasons
addressed by minute order on September 29, 2015.  ECF No. 774.

methods of doing so remotely . . . the preemption concern is enormous.  Plaintiff contends that the patent is infringed essentially every time a purchase is made over the Internet.")[26]

Accordingly, the Court agrees with TWC that the '336 Patent impermissibly relates to unpatentable subject matter under 35 U.S.C. § 101.  This is so whether the patent's elements are considered individually or in combination.  See Alice, 134 S. Ct. at 2355 (citing Mayo, 132 S. Ct. at 1294).  Recognizing the recency of binding precedent and the limited scope of case law in this area, it nonetheless appears that the '336 Patent claims an abstract idea without sufficient inventive concept under Alice.  It is therefore ineligible for patenting under Section 101, and invalid for enforcement against TWC.

> **II. Plaintiff Raises Sufficient Questions of Fact to Preclude Summary Judgment that the '336 Patent Is Invalid as Anticipated or Obvious Under 35 U.S.C. §§ 102, 103**

TWC also requests that the Court grant summary judgment under 35 U.S.C. §§ 102, 103, pursuant to which patents are

---

[26]See also, e.g., Open Text S.A. v. Alfresco Software Ltd., Case No. 13-cv-04843, 2014 WL 4684429 * 4-5 (N.D. Cal. Sept. 19, 2014) ("[Plaintiff] argues that the asserted claims 'contain limitations tying them to specific ways of using computers' . . . '[a]t best, that narrowing is an attempt to limit the use of the abstract . . . idea to a particular technological environment, which has long been held insufficient to save a claim in this context.'"); In re TLI Commc'ns, 2015 WL 627858 at * 15 ("[D]isclosure of structure and concrete components is insufficient when those disclosures are generic and do not operate as meaningful limitations on the boundaries of the patent.").

invalid if they are "anticipated" or "obvious" over prior art.
In general, an inventor may obtain a patent in response to his
application unless "the claimed invention was patented,
described in a printed publication, or in public use, on sale,
or otherwise available to the public before the effective filing
date of the claimed invention."  35 U.S.C. § 102(a)(1).  These
earlier sources of disclosure are "prior art" to a patent.

     As noted above, a patent is anticipated under Section 102
where "every limitation is found either expressly or inherently
in a single prior art reference."  King Pharms., 616 F.3d at
1274.  This means that the "four corners of a single, prior art
document describe every element of the claimed invention."
Xerox Corp. v. 3Com Corp., 458 F.3d 1310, 1322 (Fed. Cir. 2006)
(quotation omitted).  Anticipation is a question of fact,
Schering, 339 F.3d at 1343, which must be proven by clear and
convincing evidence, Sciele Pharma, 684 F.3d at 1259-61.  Such
evidence may take the form of a PHOSITA's expert testimony,
which identifies each claim element, states the witness's
interpretation of it, and explains in detail how each claim
element is disclosed in the prior art.  Schumer, 308 F.3d at
1315.

     A patent is obvious under Section 103, meanwhile, where
"the differences between the claimed invention and the prior art
are such that the claimed invention as a whole would have been

obvious before the effective filing date of the claimed invention to a [PHOSITA]." 35 U.S.C. § 103. Determinations of obviousness are questions of law, based on underlying "factual determinations" regarding the "scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any objective indicia of non-obviousness." Randall Mfg., 733 F.3d at 1362. Such facts require clear and convincing proof. Quad Envt'l Techs., 946 F.2d at 872.

Unlike anticipation determinations, obviousness determinations involve combining elements of two or more prior art references to render the claimed invention (as a whole) obvious. Courts have thus required defendants to show a teaching, suggestion, or motivation for a PHOSITA to have combined the prior art references before the invention at issue was made. Ruiz v. A.B. Chance Co., 234 F.3d 654, 664-65 (Fed. Cir. 2000). Sources of such motivation to combine references can be express or implicit and may include the prior art itself, the ordinary knowledge of a PHOSITA, and the nature of the problem to be solved, because "a disadvantage to the prior systems . . . would have motivated a [PHOSITA] to combine the prior art references." Id. at 665-66.

TWC offers four prior art references, none of which was disclosed to the USPTO for its consideration during the '336

Patent's prosecution: (1) U.S. Pat. No. 7,650,621 ("Thomas"),
filed on October 9, 2001 and published on May 16, 2002, (2) U.S.
Pat. No. 8,042,132 ("Carney"), filed on March 14, 2003 and
published on January 1, 2004; (3) TWC's own Pegasus
specifications ("Pegasus"), which were issued prior to March of
2004, and (4) U.S. Pub. No. 2007/0016530 ("Stasi"), filed on
July 15, 2005 and published on January 18, 2007.[27]

The '336 Patent was issued in response to the '188
Application, which was filed on March 12, 2007.  Compl. ¶ 18,
ECF No. 100.  The '188 Application was, in turn, a continuation-
in-part ("CIP") application[28] from U.S. Patent Application No.
10/909,192 (the "'192 Application"), filed by Plaintiff on July
30, 2004.  Id. ¶ 16.  It is therefore undisputed that Thomas,

---

[27]As TWC notes in its Reply, these references were not
"submitted to the PTO and rejected" (Plf.'s Opp. to TWC's MSJ at
13-14) *with respect to the '336 Patent.*
    Plaintiff also cites no authority for the suggestion that a
"negative inference can be drawn regarding the prior art on
which TWC relies, from TWC's decision to litigate the validity
of the BBiTV patent in this forum instead of filing IPR or CBM
petitions in the PTO."  TWC's Reply at 15, ECF No. 620.  TWC has
a right to present these defenses in this litigation, and the
Court will not speculate as part of its legal analysis on TWC's
reasons for choosing a particular forum (the Court observes,
however, that simple conservation of resources may present some
motivation).

[28]A CIP application is one that contains "a portion or all
of the disclosure of an earlier application together with added
matter not present in the earlier application."  PowerOasis,
Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1304 n. 3 (Fed. Cir.
2008).  Generally, at least one claim in a CIP application
relies on this new matter for support.  Id.

Carney, and Pegasus (all of which were available on or before March of 2004) qualify as prior art compared to the '336 Patent. The parties dispute, however, whether Stasi should be considered prior art compared to the '336 Patent, depending on whether its priority date runs from the date of the '188 Application or the '192 Application.

The Court analyzes the parties' arguments regarding each of TWC's prior art references below, reserving for its discussion of Stasi a determination regarding the '336 Patent's date of priority.

> **a.   Plaintiff Raises Sufficient Questions of Fact to Preclude Summary Judgment that Thomas Renders Anticipated or Obvious Claims 1, 2, 3, 4, and 7 of the '336 Patent**

The Court concludes that Plaintiff has raised sufficient questions of material fact to preclude summary adjudication that Thomas anticipates or renders obvious Claims 1, 2, 3, 4, and 7 of the '336 Patent.

Thomas is a patent entitled "Systems and Methods for Providing Storage of Data on Servers in an On-Demand Media Delivery System."  Brown Decl. Ex. 6, Thomas at 1, ECF No. 475-7.  It purports to allow a user "to access his or her on-demand media account," using his own equipment in different locations, "as long as [his] equipment can communicate with a remote server" of an "on-demand media delivery system."  Id.  This

48

allows the user to "upload personal images or files" to the server for "later retrieval and display," or to "freeze the delivery" of media at a certain point and then "resume the media at a later time from some other network location."  Id.

TWC's technical expert, Branko Gerovac ("Gerovac")[29] provides testimony and analysis showing that Thomas anticipates or makes obvious Claims 1, 2, 3, 4, and 7 of the '336 Patent. See Brown Decl. Ex. 12, Expert Report of Branko Gerovac ("Gerovac Rpt.") ¶¶ 225-232, ECF No. 477-1; Brown Decl. Ex. 20, Reply Appendix of Branko Gerovac ("Gerovac App'x") 5 at 5, ECF No. 477-9; Brown Decl. Ex. 16, Gerovac Reply Rpt. ¶¶ 201-09, ECF No. 477-5.[30]

---

[29]As it did in its Claim Construction Order, the Court finds that Gerovac is properly considered a PHOSITA for purposes of evaluating the '336 Patent's claims.  He holds a Bachelor of Arts degree in Physics, has more than thirty years of industry and academic experience in VOD, media, and the Internet, holds patents in areas including VOD and Internet technology, and has authored numerous publications related to the same topics.  See Claim Constr. Order at 24 n. 14, ECF No. 290 (citing Declaration of Branko Gerovac ¶¶ 2-11, ECF No. 175-5).

[30]The Court does not reproduce here Gerovac's full support for his opinions regarding anticipation and obviousness as to TWC's prior art references.  Such support spans a series of lengthy reports and appendices (as an example, his appendix for Thomas *alone* contains forty pages of discussion involving numerous diagrams and cross-references to other documents).
It is enough for present purposes to note that Gerovac provides expert testimony and analysis supporting findings of anticipation and obviousness as to Claims 1, 2, 3, 4, and 7. The Court therefore focuses on whether Plaintiff raises sufficient questions of material fact to preclude summary determinations of anticipation and obviousness.

Plaintiff's technical expert, David Wachob ("Wachob"),[31] responds with expert testimony and analysis indicating that Thomas does not disclose two elements necessary to all five of the foregoing claims of the '336 Patent: (1) a method for uploading metadata "along with" videos, and (2) automatic video listing in the EPG.  The Court evaluates these elements as to anticipation and obviousness in turn.

First, Wachob opines in his expert report that Thomas does not disclose uploading of a hierarchical address as metadata "along with" videos.  See Expert Report of David Wachob in Rebuttal to Expert Report of Branko Gerovac on the Invalidity of U.S. Pat. No. 7,631,336 ("Wachob Rpt.") ¶ 66, ECF No. 562-10.

As to anticipation (i.e., whether the four corners of Thomas disclose every element of the foregoing step of the patent), TWC argues that Wachob acknowledged at his deposition that certain items listed in Thomas *are* metadata, see Mem. in Support of TWC's MSJ at 28, ECF No. 474-1 (citing Wachob Decl., Ex. 19, Tr. 240:5-242:22), and that other portions of Wachob's

---

[31]As it did in its Claim Construction Order, the Court finds that Plaintiff's technical expert, David Wachob, is properly considered a PHOSITA for purposes of evaluating the '336 Patent's claims.  He holds Bachelor of Science and Master's degrees in electrical engineering, owns patents and publishes in the field, and has twenty years' experience in the "content delivery industry," including work with broadband products and interactive television design.  See Claim Constr. Order at 43 n. 19 (citing Witness Statement of David Wachob and Curriculum Vitae, ECF No. 226).

testimony suggest that he understood that metadata "associated with" videos would be sent "along with" the videos, see TWC's Reply at 16, ECF No. 620.   Plaintiff argues that TWC mischaracterizes Wachob's testimony, which simply admitted that Thomas discloses "some elements that may be present in metadata."   See Plf.'s Opp. to TWC's MSJ at 18-19, ECF No. 561.

The Court finds that the foregoing credibility issues are not properly resolved on TWC's MSJ.   The consistency of Wachob's testimony and its disagreement with Gerovac's testimony raise genuine issues of fact sufficient to defeat summary judgment of anticipation.   This is particularly so given TWC's burden to prove anticipation by clear and convincing evidence.

As to obviousness (i.e., whether Thomas, in combination with other prior art references, would render obvious the foregoing step of the patent), Gerovac opines that a CableLabs specification disclosed uploading videos along with hierarchical metadata prior to the '336 Patent.[32]   He asserts that this, in combination with Thomas, would have made the foregoing step of the patent obvious.   Gerovac App'x 5 at 24-26, ECF No. 477-9. Gerovac claims that the fact that the CableLabs specification

---

[32]CableLabs Video-on-Demand Content Specification Version 1.1 is in the record at Brown Decl. Ex. 27, ECF No. 479-2.   It indicates that the specification is a "cooperative effort undertaken at the direction of Cable Television Laboratories, Inc. for the benefit of the cable industry" and that it "describes how to create content for the Video on Demand Service."   ECF No. 479-2 at TWC_BB_00018817, TWC_BB_00018821.

was the industry standard specification is reason enough for a

PHOSITA to have combined it with Thomas to reach the '336

Patent's solution.  See Excerpts of Reply Expert Report of

Branko Gerovac on the Invalidity of U.S. Pat. No. 7,631,336

("Gerovac Reply Rpt.") ¶ 205, ECF No. 477-5.

Plaintiff responds, citing Wachob's testimony, that

CableLabs disclosed a format for metadata, not a *method* for

uploading metadata "along with" videos, as the '336 Patent does.

Plf.'s Opp. to TWC's MSJ at 21, ECF No. 561 (citing Wachob Rpt.

¶¶ 40, 43, 50, 58, ECF No. 562-10; Deposition of David Wachob

"Wachob Dep.") Tr. 280:23-281:5, ECF No. 562-13).  Thus, even in

combination with Thomas, Plaintiff argues that the CableLabs

specification would not render the '336 Patent obvious.  In

addition, Plaintiff argues that regardless of the specific

teachings of Thomas and CableLabs, the fact that the latter is

an industry standard does not give a PHOSITA "apparent reason to

combine them."  Id. (citing KSR Int'l, 550 U.S. at 418).

TWC replies with a brief argument that "the fact that the

CableLabs specification does not specify a method of uploading

is irrelevant because Thomas itself discloses uploading."  TWC's

Reply at 18, ECF No. 620.  This does not resolve the foregoing

format/method distinction raised by Wachob, which remains a

sufficient question of material fact to preclude summary

adjudication of obviousness.  See Wachob Rpt. ¶ 58, ECF No. 562-

10 (opining that the prior art "merely discloses what metadata is used in the EPG, not whether or *how* the metadata was uploaded); Wachob Dep. Tr. 280:23-281:281:5 (CableLabs provides a metadata "format" but doesn't discuss, *inter alia*, "how it's uploaded").

Moreover, the Court agrees with Plaintiff that TWC has not met its burden to show, by clear and convincing evidence, that a PHOSITA would have had "apparent reason" to combine the CableLabs and Thomas references.  The authority cited by TWC does not stand for the proposition that the fact that a publication is an industry standard gives a PHOSITA motivation to combine it with any other references.  A PHOSITA's reason to do so remains another sufficient question of material fact to preclude summary adjudication of obviousness.

Second – although the foregoing fact issues are already enough to defeat TWC's request for summary judgment – Wachob opines in his deposition that Thomas does not disclose automatic placement of videos into the EPG based on metadata uploaded with videos, as he says occurs in Step (c) of the '336 Patent.  See Wachob Dep. Tr. 234:15-238:7, ECF No. 562-13.[33]

---

[33]Plaintiff also complains, without support from Wachob, that Gerovac fails to apply the Court's claim construction. This is because the Court construed the WBCMS and VOD platform as "separate but connected objects," but Gerovac "points to the remote server and the communications network disclosed by Thomas

As to anticipation, TWC argues that Plaintiff "is reading into the claims a requirement which is not there."  TWC's Reply at 17, ECF No. 620.  TWC claims that the '336 Patent requires "automatically enabling the converting, navigating, and displaying of video content" (Preamble), but that this automation does not apply to "listing the title of the video content," which occurs later (Step (c)).  Id.

TWC's own briefing regarding the patent's requirements in Step (c) is not evidence (much less clear and convincing evidence) that the Court may consider in determining a summary judgment motion.  See Flaherty, 574 F.2d at 486 n.2.  Wachob's reading of the automation requirement of Step (c) creates a genuine issue of material fact to preclude summary adjudication of anticipation.

As to obviousness, TWC argues that Diaz-Perez himself knew as of late 2003/early 2004 that a video would be loaded onto a server and automatically populated to a program guide using metadata under the CableLabs specification.  Gerovac also

---

as his support for both the WBCMS and VOD platform of claim 1." Plf.'s Opp. to TWC's MSJ at 20, ECF No. 561.

    Plaintiff does not clarify why Thomas's remote server and communications network could not disclose the necessary elements of both the "separate but connected" WBCMS and VOD platform. Moreover, "[l]egal memoranda and oral argument, in the summary-judgment context, are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." Flaherty, 574 F.2d at 486 n.2.  The Court therefore does not consider this particular argument as capable of defeating TWC's motion.

testified that he knew this information.  <u>See</u> TWC's Reply at 18, ECF No. 620 (citing Reisner Decl. Ex. 7, Deposition of Milton Diaz-Perez ("Diaz-Perez Dep.") Tr. 183:20-186:12, ECF No. 621-9; Brown Decl. Ex. 16, Gerovac Reply Rpt. ¶¶ 78-82, ECF No. 477-5).

The Court does not find that this evidence meets TWC's burden to prove obviousness by clear and convincing evidence. As noted above, TWC must show that a PHOSITA had "apparent reason to combine the known elements" in the way the patent claims.  <u>KSR Int'l</u>, 550 U.S. at 418.  Diaz-Perez simply stated that he knew it was possible to automatically populate EPG listings based on metadata-video asset packages as of 2003-2004, based on CableLabs.  <u>See</u> Diaz-Perez Dep. Tr. 185:4-186:12, ECF No. 621-9.  Gerovac also opines that automation was generally "standard in the art" before 2003, including with respect to "preparation of the guide's menu," Gerovac Reply Rpt. ¶¶ 78-80, ECF No. 477-5, but this still does not establish that a PHOSITA had apparent reason to combine CableLabs with Thomas to disclose automated EPG listings.  As noted above, the Court does not conclude that the fact that a publication is an industry standard provides clear and convincing evidence that a PHOSITA would have combined it with any other reference.  Whether a PHOSITA would have had such motivation remains a question properly reserved for the jury.

For the foregoing reasons, the Court DENIES TWC's request for summary judgment that Claims 1, 2, 3, 4, and 7 of the '336 Patent are anticipated or obvious over Thomas.

        **b.**    **Plaintiff Raises Sufficient Questions of Fact to Preclude Summary Judgment that Carney Renders Anticipated or Obvious Claims 1, 2, 3, 4, and 7 of the '336 Patent**

The Court concludes that Plaintiff has raised sufficient questions of material fact to preclude summary adjudication that Carney anticipates or renders obvious Claims 1, 2, 3, 4, and 7 of the '336 Patent.

Carney is a patent entitled "System and Method for Construction, Delivery, and Display of iTV Content."  Brown Decl. Ex.7, Carney at 1, ECF No. 476-1.  It relates to certain "server," "transport," and "client" components through which interactive television is created and deployed.  Id.  Wachob summarizes Carney as a system for providing many interactive television "application programs for use by viewers of iTV, for a unified and consistent consumer presentation across a variety of platforms."  Wachob Rpt. ¶ 79, ECF No. 562-10 (emphasis removed).

Gerovac provides expert testimony and analysis showing that Carney anticipates or makes obvious Claims 1, 2, 3, 4, and 7 of the '336 Patent.  Brown Decl. Ex. 16, Gerovac Reply Rpt. ¶¶ 227-235, ECF No. 477-5; Brown Decl. Ex. 32, Gerovac App'x 8,

ECF No. 479-7; Brown Decl. Ex. 12, Gerovac Rpt. ¶¶ 255-269, ECF No. 477-1.  Wachob responds with expert testimony and analysis indicating that Carney does not disclose an element necessary to all five of the foregoing claims of the '336 Patent: a teaching to upload videos "along with" metadata.  Wachob Rpt. ¶ 80, ECF No. 562-10.  This is because the "Harvester" technology discussed in Carney is not disclosed with "any functionality for the uploading, adding or ingesting of content or metadata."  Id. Rather, Wachob reads Carney's Harvester as retrieving video and metadata files "already within the VOD platform."  Id.; see also Wachob Dep. Tr. 277:4-284:4, ECF No. 562-13.

As to anticipation, TWC points out that Carney does disclose that its Harvester accepts content from a variety of sources, including "Internet sources."  It does so by conducting a dialogue with an "asset distribution system (ADS)" that delivers "video assets and metadata."  The Harvester then "acts as an asset management system . . . for the purpose of retrieving and storing video asset metadata in the catalog engine."  Mem. in Support of TWC's MSJ at 30, ECF no. 474-1 (citing Carney at 1 and Col. 8, ln. 29-35, 57-65, ECF No. 476-1); see also TWC's Reply at 20, ECF No. 620.

The Court cannot conclude that these passages provide clear and convincing evidence of anticipation.  The passages of Carney discussed by Gerovac and TWC plainly disclose that the Harvester

receives video assets and metadata from the ADS within the system.  These passages do not, however, appear to disclose a "functionality" for uploading or ingesting the video content and metadata in the first place.  At the very least, Wachob's interpretation of the scope of Carney simply conflicts with Gerovac's, leaving a genuine issue of material fact sufficient to defeat summary adjudication of anticipation.

As to obviousness, TWC claims that the CableLabs specification taught uploading of videos "along with" metadata, and that a PHOSITA would have had apparent reason to combine CableLabs with Carney.  Mem. in Support of TWC's MSJ at 30, ECF No. 474-1; Gerovac Rpt. ¶¶ 99, 228, ECF No. 477-5.

The Court concludes that TWC does establish a PHOSITA's apparent reason to combine these references prior to the '336 Patent.  As Gerovac points out, Carney itself teaches that "this process may conform to existing standards such as the . . . CableLabs VOD Content Specification."  Carney at Col. 8, ln. 57-65, ECF No. 476-1.  A motivation to combine references may be found explicitly or implicitly in the prior art references themselves.  Ruiz, 234 F.3d at 665 (citation omitted).  Although a prior art reference "need not expressly teach that the disclosure contained therein should be combined with another," id. (citing Motorola, Inc. v. Interdigital Tech. Corp., 121 F.3d

1461, 1472 (Fed. Cir. 1997)), Carney does expressly suggest such a combination here.

However, Plaintiff has raised a genuine issue of material fact as to whether CableLabs actually teaches uploading videos "along with" metadata.  Relying on Wachob's testimony, Plaintiff contends that "CableLabs is merely a specification that describes the *format* of the metadata file.  CableLabs does not disclose any *method* of actually uploading metadata, let alone one that takes place 'along with' the video content."  Plf.'s Opp. to TWC's MSJ at 23, ECF No. 561 (citing Wachob Rpt. ¶¶ 40, 43, 50, 58, ECF No. 562-10 (emphasis added); Wachob Dep. Tr. 280:23-281:5, ECF No. 562-13).

TWC discusses that *Carney* itself discloses uploading to a WBCMS via the Internet and use of a separate but connected VOD platform.  See TWC's Reply at 20, ECF No. 620.  As with Thomas, however, TWC does not resolve the format/method distinction raised by Wachob with respect to the scope of *CableLabs*.  That issue remains an outstanding question of material fact that precludes summary adjudication of obviousness.[34]

    **c.   Plaintiff Raises Sufficient Questions of Fact to Preclude Summary Judgment that Pegasus Renders**

---

[34]Also insufficient to resolve this question is Gerovac's observation that CableLabs disclosed that an asset package should include video content and metadata together.  See Gerovac Rpt. ¶ 99, ECF No. 477-5.  This does not prescribe a *method* for achieving such uploading.

**Obvious Claims 1, 2, 3, 4, and 7 of the '336 Patent**

The Court concludes that Plaintiff has raised sufficient questions of material fact to preclude summary adjudication that Pegasus renders obvious Claims 1, 2, 3, 4, and 7 of the '336 Patent.

Pegasus is a set of specifications that TWC developed to facilitate VOD operations in its own networks and across the cable industry.  See Mem. in Support of TWC's MSJ at 35, ECF No. 474-1.  The Pegasus specifications were issued by March of 2004 and posted on a public website.  Id. at 3; see also Brown Decl. Ex. 22, Deposition of Mike LaJoie ("LaJoie Dep.") Tr. 148:18-156:7, 146:12-148:12, ECF No. 477-16; Brown Decl. Ex. 23 at 6-13, ECF No. 478-1.

Gerovac provides expert testimony and analysis to demonstrate that Pegasus, in combination with other references, renders obvious Claims 1, 2, 3, 4, and 7 of the '336 Patent. See Brown Decl. Ex. 16, Gerovac Reply Rpt. ¶¶ 133-165, ECF No. 477-5; Brown Decl. Ex. 24, Gerovac App'x 2, ECF No. 478-2; Brown Decl. Ex. 12, Gerovac Rpt. ¶¶ 167-194.[35]

---

[35]TWC's MSJ purports to challenge only that Pegasus renders Claims 1, 2, 3, 4, and 7 obvious, not anticipated.  See Mem. in Support of TWC's MSJ at 34, ECF No. 474-1; TWC's Reply at 22, ECF No. 620.

Wachob, meanwhile, provides expert testimony and analysis to demonstrate that three elements relevant to all five of the challenged claims are not obvious over Pegasus, in combination with other references: (1) Pegasus does not disclose converting video content *after* uploading it to the WBCMS, (2) Pegasus does not disclose uploading content "along with" hierarchical addressing metadata, and (3) there is no WBCMS disclosed by Pegasus.  Plf.'s Opp. to TWC's MSJ at 38, ECF No. 561.[36]  The Court addresses these issues in turn.

First, Plaintiff has raised a genuine issue of material fact as to whether a PHOSITA would have combined Pegasus with other references to disclose converting video content *after*, rather than *before*, uploading.  TWC admits that only the former technique is used in the '336 Patent.  Mem. in Support of TWC's MSJ at 40, ECF No. 474-1.  Gerovac opines that if the video content could be converted before uploading, so too could it be converted after uploading.  He testifies that at which step one chooses to do so is "largely a business and economic decision" that is not motivated by any "technical challenge to converting

---

[36]TWC's MSJ anticipatorily briefs an issue of whether the EPG in Pegasus used the same hierarchical address that was uploaded as metadata.  See Mem. in Support of TWC's MSJ at 36, 38-40, ECF No. 474-1.  Plaintiff did not, however, pursue this point in its brief.  The Court therefore declines to consider such argument at this time.

after the upload." Gerovac Reply Rpt. ¶ 148, ECF No. 477-5; see also Gerovac Rpt. ¶¶ 183-92, ECF No. 477-1.

The Supreme Court has stated that where there are a "finite number of identified, predictable solutions" to a problem, a PHOSITA "has good reason to pursue the known options." KSR Int'l, 550 U.S. at 421.  However, the Federal Circuit has subsequently clarified that a defendant must also show that a PHOSITA "would have had a reason to select the route that produced the claimed invention" of such a finite number of options.  See, e.g., In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig., 676 F.3d 1063, 1072 (Fed. Cir. 2012) (citation omitted).  TWC has not offered such evidence as to the option of converting video content after uploading.

Regardless, Wachob testifies that a PHOSITA would *not* have pursued this option.  He indicates that this would have imposed impracticalities for a large company like TWC, which evidently operated over fifty cable headends and would have had to repeat the conversion process over fifty times if video content did not arrive at the WBCMS pre-converted.  See Wachob Rpt. ¶ 42, ECF No. 562-10.  This testimony raises a genuine issue of material fact as to whether a PHOSITA would have been motivated to combine Pegasus with other references that disclosed conversion of content after uploading.

62

Second, Plaintiff has raised a genuine issue of material fact as to whether a PHOSITA would have combined Pegasus with other references to disclose uploading videos along with metadata. Wachob argues that Pegasus does not disclose the fact that video content is uploaded "along with" metadata when it is transmitted to the WBCMS, as occurs in the '336 Patent. See Wachob Rpt. ¶ 40, ECF No. 562-10.

The parties' dispute seems to center on how a PHOSITA would analogize the teachings of Pegasus in the context of the '336 Patent. TWC argues that the Pegasus Asset Management System receives a video asset package (a video file plus metadata) from the ADI, and that this sufficiently discloses uploading videos "along with" metadata to a WBCMS. See TWC's Reply at 23, ECF No. 620 (citing Gerovac Rpt. ¶ 175, ECF No. 621-11; Gerovac Reply Rpt. ¶¶ 99-100, ECF No. 477-5; Brown Decl. Ex. 25, Draft Pegasus Asset Distribution Interface (2000) at 1, ECF No. 478-3). Relying on Wachob, Plaintiff claims that this step of Pegasus relates to the portion of the '336 Patent wherein content is transferred from the WBCMS to the VOD platform, not the portion wherein it is uploaded to the WBCMS in the first place. See Plf.'s Opp. to TWC's MSJ at 42-43, ECF No. 561.

The Court observes that the parties' debate on this issue may be one properly regarding anticipation, not obviousness. The parties do not brief whether a PHOSITA would have combined

63

Pegasus with another reference to disclose uploading videos "along with" metadata; rather, they dispute whether Pegasus itself discloses this option.  This does not provide clear and convincing proof of obviousness.

In any event, the debate between the parties' experts regarding whether Pegasus discloses uploading of videos "along with" metadata at the *correct* step of the '336 Patent's method is a genuine question of material fact properly reserved for jury resolution.  This precludes summary adjudication.

Third, Plaintiff has raised a genuine issue of material fact as to whether a PHOSITA would have combined Pegasus with other references to disclose the type of WBCMS in the '336 Patent.  Plaintiff argues that Pegasus does not disclose (and that Defendants have not shown it was obvious to combine Pegasus with references that disclose) a WBCMS capable of (1) managing content, and (2) receiving such content over the Web.  See Plf.'s Opp. to TWC's MSJ at 40, ECF No. 620.[37]  The WBCMS in the

---

[37]TWC contends that Pegasus shows that the Asset Management System is separate from a "[d]elivery system (like the video server)," and that these components together form a VOD platform.  See TWC Reply at 22, ECF No. 620 (citing Draft Pegasus Asset Distribution Interface (2000) at TWC_BB_00030904, ECF No. 478-3; Gerovac App'x 2 at 32, ECF No. 478-2).

Plaintiff nonetheless asserts, in what it claims is a third argument against obviousness, that the "Pegasus AMS is part of the VOD platform, and not separate from it, as the claims require."  Plf.'s Opp. to TWC's MSJ at 41, ECF No. 561.  As TWC observes, Plaintiff's contention is unexplained and unsupported by evidence, including expert testimony from Wachob.

'336 Patent has these capabilities, consistent with the Court's Claim Construction Order.

Regarding content management (the first issue), TWC observes that the Pegasus specification itself shows that its Asset Management System uses metadata "to manage assets."  Draft Pegasus Asset Distribution Interface (2000) at TWC_BB_00030902, TWC_BB_00030905, ECF No. 478-3.  Wachob nonetheless testified that the Pegasus system does not, in his opinion, possess capabilities of "managing" content – instead, the Pegasus "catcher" is an unsophisticated receiver that only stores and transmits content.  He adds that TWC has shown no motivation for a PHOSITA to have combined Pegasus with a WBCMS-disclosing reference.  Wachob Rpt. ¶ 41, ECF No. 562-10.  This testimony raises sufficient issues of material fact to defeat summary adjudication.

Regarding Web uploading (the second issue), Gerovac indicates that "uploading to a web-based server" was generally known to PHOSITAs as early as 2000.  Even if it were not, he also cites several additional references (Kanojia, Novak,

---

Legal briefing is not itself evidence upon which the Court can rely in resolving a summary judgment motion.  The Court therefore does not find that Plaintiff's foregoing argument raises a genuine issue of material fact to defeat summary judgment.

Thomas, and Stasi) that relied on the Web for uploading before the '336 Patent.  Gerovac App'x 2, ECF No. 478-2.

As Plaintiff points out, TWC does not articulate a reason why a PHOSITA would have had apparent reason to combine Pegasus with the four specific references Gerovac cites.  This fails TWC's burden to show clear and convincing evidence of obviousness, to the extent its challenge relies on those four references.  The parties also cite competing authority regarding whether PHOSITAs' contemporaneous ability to upload content via the Web provided apparent reason to combine that general knowledge with Pegasus.  The Court declines to reach this disagreement, as Plaintiff has already demonstrated sufficient issues of material fact, discussed above, to defeat summary adjudication regarding the obviousness of Claims 1, 2, 3, 4, and 7 over Pegasus.

> **d.  Plaintiff Raises Sufficient Questions of Fact to Preclude Summary Judgment that Stasi Renders Anticipated or Obvious Claims 1, 2, 4, and 7 of the '336 Patent**

The Court concludes that Plaintiff has raised sufficient questions of material fact to preclude a summary judgment ruling that the '336 Patent's claims are "not entitled to priority dates earlier than the March 12, 2007 date of the '188 application," as TWC requests.  See Mem. in Support of TWC's MSJ at 14, ECF No. 474-1.  In addition, because Stasi could not

66

constitute prior art as to the '336 Patent without such a determination, the Court further concludes that Plaintiff has raised sufficient questions of material fact to preclude summary adjudication that Stasi renders the '336 Patent's Claims 1, 2, 4, and 7 anticipated or obvious.

### i. The Parties' Arguments Regarding Stasi

Stasi is a patent application publication related to a "media file distribution and method." It discloses a "fully automated management system for a company involved in video/file distribution, such as in video on demand." It also allows users to manage content "remotely from anywhere through the Internet." Brown Decl. Ex. 8, Stasi at 1, ECF No. 476-2.

The parties' arguments regarding Stasi are as follows. TWC requests that the Court issue a ruling that the '336 Patent is *not* entitled to a priority date earlier than the date on which the '188 Application was filed: March 12, 2007. See Mem. in Support of TWC's MSJ at 14, ECF No. 474-1. This would make Stasi, published on January 18, 2007, prior art compared to the '336 Patent.

Assuming that Stasi is prior art, TWC then argues that it anticipates or renders obvious Claims 1, 2, 4, and 7 of the '336 Patent. See id. at 31-34.[38] TWC's support is contained at Brown

---

[38]The Court observes that Gerovac also opines that Claim 3 is anticipated or obvious under Stasi. See Brown Decl. Ex. 16,

Decl. Ex. 12, Gerovac Rpt. ¶¶ 244-51, ECF No. 477-1; Brown Decl. Ex. 16, Gerovac Reply Rpt. ¶¶ 217-226, ECF No. 477-5; Brown Decl. Ex. 21, Gerovac App'x 7, ECF No. 477-10.

Plaintiff, meanwhile, argues that the '336 Patent is entitled to priority as of the date of the '192 Application (parent of the '188 Application): July 30, 2004. <u>See</u> Plf.'s Opp. to TWC's MSJ at 25, ECF No. 561.  This would make Stasi ineligible as prior art.[39]

The Court takes note that Plaintiff's entire briefing regarding Stasi is entitled "Stasi is not prior art."  <u>Id.</u> at 24.  If Stasi *is* prior art, Plaintiff raises only two sentences of argument, claiming that Gerovac "has not identified a single reason why" a PHOSITA would be motivated to combine Stasi with the other references he cites.  <u>See</u> <u>id.</u> at 34-35.  This argument has no relevance to TWC's evidence that Claims 1, 2, and 4 are

---

Gerovac Reply Rpt. ¶¶ 221, 226, ECF No. 477-5.  TWC's brief, however, requests a finding only that Stasi anticipates or renders obvious Claims 1, 2, 4, and 7.  The Court therefore does not consider Stasi's effect on Claim 3.

[39]The Court credits and appreciates Plaintiff's candid admission that a March 26, 2004 Disclosure Document referenced in its answers to interrogatories is "not relevant to the current motion" (notwithstanding TWC's anticipatory briefing) and that the priority date for the '336 Patent should instead be determined through reference to Plaintiff's patent applications. <u>See</u> Plf.'s Opp. to TWC's MSJ at 35, ECF No. 561.
As Plaintiff does not attempt to obtain an earlier priority date based on the Disclosure Document, the Court does not discuss it further.

anticipated by the four corners of Stasi.  It is relevant to TWC's evidence that Claim 7 is obvious over Stasi in combination with other references; however, Plaintiff's point is factually incorrect.  Gerovac provides reasons why a PHOSITA would be motivated to combine Stasi with other references.  See Declaration of Daniel Reisner ("Reisner Decl.") Ex. 9, Gerovac Rpt. ¶¶ 252-54).[40]

Plaintiff's brief therefore raises no genuine issue of material fact bearing on the conclusion that Stasi renders Claims 1, 2, 4, and 7 anticipated or obvious, *if* Stasi is prior art.  The Court's inquiry thus collapses, for present purposes, into determining whether Stasi is prior art.  See, e.g., Positive Techs. Inc. v. Sony Elecs. Inc., No. C 11-02226 SI, 2012 WL 162707 * 6-7 (N.D. Cal. Jan. 19, 2012) (explaining analytical and burden-shifting framework on similar facts).[41]

---

[40]To the extent that this portion of Gerovac's report incorporates by specific references his prior discussions regarding motivation to combine references, apparently for the sake of efficiency, the Court does not consider such an approach impermissible.  Plaintiff also has not offered any authority suggesting that this would be the case.

[41]As noted above, the request before the Court is TWC's motion for a ruling that the '336 Patent is *not* entitled to a priority date before the '188 Application was filed.  Plaintiff does not independently request that the Court find that the '336 Patent *is* entitled to a particular priority date, such as the date of the '192 Application; rather, Plaintiff's briefing simply opposes TWC's request.

ii.   Whether Stasi Is Prior Art

The Court finds that Plaintiff has raised genuine issues of material fact sufficient to preclude a summary adjudication that the claims of the '336 Patent are *not* entitled to a priority date earlier than March 12, 2007 (the date of the '188 Application).

A patent application is "entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112." PowerOasis, 522 F.3d at 1306; see also 35 U.S.C. § 120. Under 35 U.S.C. § 112, the earlier application's written description "must 'convey with reasonable clarity to [PHOSITAs] that, as of the filing date sought, [the inventor] was in possession of the invention.'" Id. (quoting Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991)).[42]  TWC argues that the '192 Application does not provide the written disclosure required under 35 U.S.C. § 112 and therefore does not

_____

[42]The Court observes that the parties did not brief the issue of "enablement," an additional requirement under 35 U.S.C. § 112(a) pursuant to which a patent must enable a PHOSITA to make and use the invention without "undue experimentation." See, e.g., Chiron Corp. v. Genetech, Inc., 363 F.3d 1247, 1253 (Fed. Cir. 2004).  Because the parties did not brief whether the '336 Patent claims were "enabled" based on earlier disclosures, the Court does not consider that issue.

confer on the '336 Patent the benefit of its 2004 filing date.
See Mem. in Support of TWC's MSJ at 15-16, ECF No. 474-1.

Any subject matter that arises for the first time in a CIP application (such as the '188 Application) does not receive the benefit of an earlier application.  Id. (quoting Augustine Med., Inc. v. Gaymar Indus., Inc., 181 F.3d 1291, 1302-03 (Fed. Cir. 1999)).  Entitlement to the earlier filing date also does not extend to subject matter that was not disclosed, even if it would have been obvious in combination with other references from what is disclosed.  Id. at 1306-07 (citations omitted). Compliance with 35 U.S.C. § 112's written description requirement is a question of fact.  Id. at 1307 (citation omitted).[43]

TWC introduces evidence that the '192 Application, parent to the '188 Application, failed to disclose three elements of the '336 Patent: (1) a "hierarchical address" (which is uploaded

_____

[43]The parties debate the burden of proof related to determining the '336 Patent's priority date.  The somewhat convoluted state of the law appears to be that once a defendant "has introduced sufficient evidence to put at issue whether there is prior art alleged to anticipate the claims being asserted . . . earlier than the apparent effective date of the asserted patent claim, the patentee has the burden of going forward with evidence and argument to the contrary."  Tech. Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1329 (Fed. Cir. 2008).
    The ultimate burden of proving invalidity does not, however, shift away from the defendant, "however much the burden of going forward may jump from one party to another as the issues in the case are raised and developed."  Id.

as metadata), (2) a "video ID (VID) address" in a video content database, and (3) any video content that is not generated by consumers or for advertising.  TWC argues that the '192 Application's failure to disclose these elements of the '336 Patent, consistent with 35 U.S.C. § 112, means that it cannot serve as the basis for the patent's priority date.

TWC's first two arguments are efficiently discussed together.  Gerovac opines that the '336 Patent's terms "VID address" and "hierarchical address" are not used or otherwise supported in the '192 Application.  See Gerovac Rpt. ¶¶ 123-24, 129-30, 132, ECF No. 477-1.  Wachob, meanwhile, opines that "there is overwhelming support for all claim elements of the '336 patent within the original disclosure of the '192 application and therefore it should be entitled to the priority date of the '192 application."  Wachob Rpt. ¶ 13, 562-10.

As TWC admits, Wachob's report identifies paragraphs 28, 31, and 34 of the '192 Application as supporting the "hierarchical address" term, and paragraphs 7-9, 22-24, 29, 32, 35, 36, 38, 41, 43, and 45 as supporting the "VID address" term.  See Mem. in Support of TWC's MSJ at 17-18, ECF No. 474-1 (citing Brown Ex. 13, Wachob Rpt. Ex. B at 9-14, 20-11, ECF No. 477-2).  Wachob also provided specific deposition testimony regarding places in which the '192 Application discloses the "hierarchical

72

address" limitation, and his understanding of that term.  Wachob Dep. Tr. 95:9-103:2, ECF No. 562-13.

Plaintiff's evidence in the form of Wachob's testimony and report creates a genuine issue of material fact sufficient to defeat summary adjudication of TWC's request.  The Court recognizes that Wachob does not provide deposition testimony regarding the "VID address," and that his report passages involving the VID address are recited at a fairly general level of detail.  Nonetheless, that evidence, in combination with Wachob's expert testimony that all claims of the '336 Patent are disclosed in the '192 Application, creates a genuine issue of material fact properly reserved for the jury's determination. That Plaintiff's evidence regarding the "VID address" may be somewhat thin does not allow the Court to dismiss it at the summary judgment stage.[44]

TWC's third argument – that the '192 Application does not disclose video content that is not generated by consumers or for advertising – appears to be somewhat of a red herring.  This narrow disclosure described by TWC is not contained in the broader language of the '336 Patent itself.  Rather, the '336

---

[44]This is true despite Gerovac's rebuttal that "Mr. Wachob has not interpreted these statements in any way to suggest that they support the full scope of claim language."  Brown Decl. Ex. 15, Gerovac Reply Rpt. Ex. 3, ECF No. 477-4.  This is a credibility dispute properly resolved by the jury.

Patent claims simply refer to "video content" in general.  The parties did not request that the Court construe that term further.  <u>See</u> Claim Constr. Order at 47, ECF No. 90 (preserving the term "video content" without further construction, which was not requested by the parties).[45]

It does not, therefore, appear reasonable for TWC to argue that the '192 Application must provide a written disclosure for video content that is not specifically generated by consumers or for advertising.  The '336 Patent language is broader; it is therefore unclear why TWC believes the '192 Application may not simply make the same broad disclosure in order to provide a written description within the meaning of 35 U.S.C. § 112.[46]  As to the broader term actually used in the '336 Patent – "video content" – TWC does not appear to dispute that such disclosure

---

[45]The Court notes that the holding of <u>Liebel Flarsheim Co. v. Medrad, Inc.</u>, 481 F.3d 1371, 1380 (Fed. Cir. 2007), cited by TWC, related to the requirement of enablement (rather than written description) under 35 U.S.C. § 112.  <u>See</u> TWC's Reply at 13, ECF No. 620.

As noted above, the parties did not brief the issue of enablement.  If TWC wished to address enablement regarding the '192 Application, such argument may not be raised for the first time in a Reply brief.

[46]TWC's argument seems essentially to be that a written description for a broad patent term (here, "video content") must explicitly describe any included categories that could be read in (here, video content "other than consumer-generated" and "other than advertising"), simply because a court previously declined an accused infringer's request to construe other terms in a way that would limit them to certain such categories.

None of the cases cited by TWC stands for that principle, nor can the Court imagine that this would be a workable rule.

*does* appear in the '192 Application.   This is consistent with
Wachob's testimony that the '192 Application makes this
disclosure.   Wachob Dep. Tr. 78-86, ECF No. 562-13.

For the reasons discussed above, the Court finds that
genuine issues of material fact exist as to whether the '336
Patent is not entitled to a priority date preceding the '188
Application.   These issues preclude summary adjudication of such
a finding, and the Court need not evaluate whether Plaintiff's
remaining evidence creates additional questions of fact related
to the same issue.   As a short summary, however, Plaintiff's
additional arguments are that the '192 Application supports the
disclosures in the '336 Patent because:

1. Claim 1 of the '336 Patent was initially rejected
   during prosecution on grounds of obviousness-type double
   patenting over Claim 21 of the '192 Application;

2. The USPTO recently granted Mr. Diaz-Perez U.S.
   Patent No. 9,106,959 (the "'959 Patent"), which is a
   descendant of the '192 Application and contains a Claim
   1 that is broader than the '336 Patent's Claim 1; and

3. HTI argued in its CBM petition before the PTAB
   that '336 Patent's Claim 1 is "identically the
   same invention" as Claim 1 of another patent related to
   the '336 Patent.

See Plf.'s Opp. to TWC's MSJ at 27-30.

For the reasons explained in TWC's Reply at 9-11, ECF No.
620, the Court agrees with TWC that these three arguments are
not dispositive of the '336 Patent's priority date.   HTI's
arguments before the PTAB do not bind TWC; moreover, HTI's CBM

petition was rejected by the PTAB, leaving no relevant finding for the Court to consider. In addition, the USPTO's findings related to other patents and different legal issues that are not dispositive here.

The Court notes that TWC would, of course, be permitted to pursue its arguments regarding the '336 Patent's priority date and invalidity over Stasi at trial. The Court simply holds here that (1) Plaintiff has raised genuine issues of material fact sufficient to preclude a summary adjudication that the claims of the '336 Patent are *not* entitled to a priority date earlier than March 12, 2007 (the date of the '188 Application), and (2) accordingly, Plaintiff has raised sufficient questions of material fact to preclude summary judgment that Claims 1, 2, 4, and 7 of the '336 Patent are anticipated or obvious under Stasi.

### CONCLUSION

For the reasons set forth above, the Court finds that the '336 Patent is invalid under 35 U.S.C. § 101. Accordingly, the Court GRANTS IN PART and DENIES IN PART Defendants Oceanic Time Warner Cable, LLC and Time Warner Cable, Inc.'s Motion for Summary Judgment Regarding Invalidity of U.S. Patent No. 7,631,336, ECF No. 474. TWC's motion is granted as to its argument that the '336 Patent is invalid under 35 U.S.C. § 101, but denied as to its arguments that the '336 Patent's claims are

obvious or anticipated over prior art.   Plaintiff's claims of infringement of the '336 Patent are DISMISSED with prejudice.[47]


IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 29, 2015.

_____
Alan C. Kay
Sr. United States District Judge


Broadband iTV, Inc. v. Time Warner Cable, Inc. et al., Civ. No. 15-00131 ACK-RLP, Order Granting in Part and Denying in Part Defendants Oceanic Time Warner Cable, LLC and Time Warner Cable, Inc.'s Motion for Summary Judgment Regarding Invalidity of U.S. Patent No. 7,631,336.

---

[47]Based on the foregoing, all other pending motions in the instant case are DENIED as moot.